## GEORGE HEDRICK V. THE STATE.

### No. 1657. Decided May 10, 1899.

**1. Murder—Evidence.**

On a trial for murder, where it appeared that deceased was shot at night by a bur-
glar, who had entered a smokehouse owned by the father of deceased, and where
defendant's own proved confession and other facts had identified him as the guilty
party, it was not error to permit the State to prove a conversation defendant had
with the witness a month prior to the homicide, in which defendant had said that he
knew where there was a smokehouse full of meat and a trunk with some money in it
that could be got at easily. The testimony was pertinent as tending to show defend-
ant intended to burglarize the meat house.

**2. Same—Immaterial and Irrelevant Testimony.**

On a trial for murder, where a magistrate had testified that he had received
from one Mc. the empty shell from which it was claimed the ball was fired which
killed deceased, and defendant asked the witness, "If Mc was not the Mc. who was
implicated in the postoffice robbery in the city of H?" and upon objection by the
State the question was ruled out; Held, it was irrelevant and immaterial whether
Mc. robbed the postoffice or not.

**3. Objections to Admission of Evidence—Bill of Exceptions.**

Where no bill of exceptions was reserved to the admission of evidence, objections
to the same will not be considered.

**4. Witness—Right to Explain His Acts and Conduct.**

Counsel for accused having asked a witness if he, the witness, had not gone to one
McB. to try to get him to change his evidence given at the coroner's inquest, Held,
it was competent for the witness, in answer to the question, to disclaim any such
intention, and tell why it was he did go to see said McB.

**5. "The Rule"—Enforcement of.**

It is within the discretion of the court to relax the enforcement of "the rule" as
to witnesses, and where injury to defendant's rights is not manifest, it will not con-
stitute reversible error that the court permitted a witness to testify who was not
placed under the rule and who had heard all the other witnesses testify.

**6. Burglary—Force—Charge.**

Upon the issue of force, as to a burglarious entry, it was not error for the court
to instruct the jury that the slightest force is sufficient, such as the opening of a
door or the turning of a button. Sparks v. State, 34 Texas Crim. Rep., 86.

**7. Same.**

Where the evidence discloses that a burglary was committed in the night, it was
not error for the court to charge upon a nighttime burglary on the trial of a mur-
der committed in the perpetration of the burglary.

**8. Circumstantial Evidence—Confession—Charge.**

A defendant's admission or confession of guilt, when proved, makes the case one
of direct and not circumstantial evidence, and it is only when the evidence is wholly
circumstantial that the court is required to so charge.

**9. Murder in the Perpetration of Burglary.**

On a trial for murder, where the evidence shows it was committed in the perpe-
tration of burglary, it was not error to refuse to instruct the jury that before they

could convict of murder in the first degree they must find that the killing took place under such circumstances which, if no burglary had been committed, the killing would have been murder in either the first or second degree.

#### 10. Same—Manslaughter—Self-Defense—Charge.

It is always proper for the court to refuse to charge upon manslaughter or self-defense where a murder was committed in the perpetration of a burglary.

#### 11. Same—Charge of Court as to Burglary.

On a trial for murder, where the evidence showed that defendant was inside the smokehouse and endeavoring to escape when he fired the fatal shot, and though he had previously taken some of the meat out of the house, some of it was still inside in his sack; Held, the burglary was not complete, but was still being committed at the very time the shot was fired, and the court did not err in submitting the question as to whether the burglary was being committed at the time.

#### 12. Same—Murder in the Perpetration of Burglary—Charge of Court.

While Penal Code, article 711, which declares that all murder committed in the perpetration of the offenses named (one of which is burglary) does not eliminate the element of malice from the definition of murder, still it declares that a murder so perpetrated is murder in the first degree, and where the court charges on express malice, and then follows that charge by another to the effect that all murder committed in the perpetration of burglary is murder in the first degree, such charge is correct if the evidence does not disclose any other theory of homicide.

#### 13. Murder in the First Degree—Evidence Sufficient.

See opinion of facts which the court hold amply sufficient to support a verdict and judgment for murder in the first degree, assessing a life term in the penitentiary.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appeal from a conviction for murder in the first degree; penalty, a life term in the penitentiary.

The indictment charged appellant with the murder of J. F. Pauly, on the 8th day of May, 1897, by shooting him with a pistol.

The important facts attendant upon the killing are sufficiently stated in the opinion.

*Wear & Parr,* for appellant, filed an able brief, the principal points of which are fully stated, and the authorities cited discussed in the opinion.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted for the murder of J. F. Pauly, by shooting him with a pistol, and his punishment assessed at confinement in the penitentiary for life.

The corpus delicti is undisputed, and disclosed that deceased was shot and killed by a burglar in his effort to escape from a smokehouse he had entered. The thief and murderer, whoever he was, had helped himself to three hams and about fifty pounds of meat. It is shown by the evidence that two sides and a shoulder of meat were left by the burglar in a sack when he fled. R. W. Pauly, father of deceased, testified, in substance: "My son died in Hill County, on Sunday, the 9th of May, 1897. On the 8th of May he was at my house, and about 10 o'clock that night he was at my smokehouse, and was shot by some one from the inside

of the smokehouse. In the early part of the night deceased went over to see a boy who was sick on my place, and was gone about two hours,—as well as I remember, until about 10 o'clock. When he returned he came to the front door and called me and said, 'Some one is in the smokehouse.' I went out the back door of my residence. The door of the smokehouse was open, and I walked to the smokehouse door and pushed it to. As I put my hand on the door some one from the inside said, 'Hold up, there.' I pushed the door to, and the party on the inside shoved it back on me, and pointed a pistol out, and I caught it with my left hand, and it fired. Deceased had run up almost against the pistol when it fired. He fell back, and for a second or two I did not know what occurred. I saw the party as he left the place somewhere not far from the smokehouse, on the north side of the smokehouse. The party had on a white coat. This is all the description I can give of him. After deceased was shot, my wife and I took him in the house, and laid him down on the floor, and I ran about half a mile, and got a party to go after the doctor. My son died about 2 o'clock Sunday, May 9th. When I went into the smokehouse afterwards, I found a sack in there, with two sides and a shoulder of meat in it. Also found three hams about sixty-five or seventy yards out from the smokehouse, a little northeast from the smokehouse,"—and identified the sack offered in evidence as the sack he saw at the smokehouse. On the night of the burglary and homicide, Bert McBride, Mrs. McBride, and Miss Mittie McBride were spending the night at the home of appellant; and they testified to facts showing that defendant came in late that night and confessed to them, in substance: "That he reckoned he had killed a fellow. Said he had been down to Pauly's. He said he thought he would go and rustle him some meat, and they caught him. He said they caught him in the smokehouse; that he stuck his pistol out, and one of them grabbed it, and he shot." Other witnesses testify to finding a pistol that appellant had on the night of the killing. There is other testimony showing that this particular pistol had been hid away and found, and identified as the pistol that Bert McBride testified to seeing appellant with on the night of the killing. There are other circumstances in the record going to identify appellant as the party who killed deceased.

Appellant's first assignment of error complains of the action of the court permitting the witness Bill Patterson to detail a conversation had with defendant about the latter part of March, and prior to the time of the alleged homicide, as shown by bill of exceptions. From this bill it appears that the witness testified, over the objection of appellant, that he had a conversation with appellant about the last of April; that he and appellant were talking about times being hard, and appellant said that he was going to make a living by work if he could, and, when he could not, then he was going to rustle for it; that witness stated to appellant the time for rustling had played out in this country. Thereupon defendant stated that he knew where there was a smokehouse full of meat, and a

trunk with some money in it, that could be got at easily.   Appellant's objection to this evidence is that the same is not pertinent or relevant to any issue in this case; that the conversation was not shown to have in any manner referred to deceased or the smokehouse alleged to have been burglarized.   We think this testimony was germane and pertinent; and while, as indicated in the exception, it does not show directly that it referred to the deceased, it does show that appellant knew where there was a smokehouse full of meat; and we think it was pertinent testimony showing that appellant intended to burglarize this meathouse.   Briscoe v. State, 32 Texas Crim. Rep., 411; Banks v. State, 13 Texas Crim. App., 182; Sims v. State, 10 Texas Crim. App., 132; Preston v. State, 8 Texas Crim. App., 30; Wills. Circ. Ev., pp. 53, 55; 2 Best on Ev., sec. 458.

Appellant's second assignment of error states that the court erred in sustaining the objection to the following question asked Squire Ham by appellant:   "Was not the McCall you testify about, the McCall who was implicated in the postoffice robbery in Hillsboro?"   Appellant insists that said testimony was admissible to discredit the source of the State's witness' information, and that the evidence shows that the witness Ham received from said McCall the empty shell out of which it was claimed the ball was fired that killed deceased.   We think it is irrelevant and immaterial whether the McCall who gave the witness the shell robbed the postoffice at Hillsboro or not.

Appellant's third assignment complains of the court's action in overruling his objection to the witness Bob Davis testifying to conversations had with defendant after he was arrested.   We find no bill as to this assignment.

Appellant's fourth assignment is the same as his second, except the question was asked Ben Brown instead of Squire Ham, as in that instance. We do not think the court erred in refusing to permit appellant to ask the question.

Appellant's fifth assignment is "that the court erred in permitting the witness Obe Cunningham, over the objection of the defendant, to testify to a conversation he had with Bert McBride some days after the killing, and to the witness stating, among other things, that he was satisfied that Bert McBirde knew more than he had told."   It appears from the bill that appellant's counsel asked Obe Cunningham if he did go to witness McBride, after he had testified at coroner's inquest, and try to get said witness to change his evidence given at said inquest; and he said he did not go to him for that purpose, but because he believed he knew more than he told.   The bill is very vague and indefinite, but a close scrutiny of the same discloses the fact, as we understand it, that appellant objects to the last statement above.   If this is not the contention, then the bill has no meaning.   It will be seen that appellant asked the witness why he went to see the witness McBride, and intimated that the witness went to get him to change his testimony.   Now, certainly, the witness Obe Cunningham would have the right to disclaim this intention, and tell why it

was he did go to the witness McBride. If the witness Cunningham believed that McBride knew things he had not testified about, we think that would be a valid reason for going to see him; and we do not think the court erred in admitting this testimony..

We do not think there is any merit in appellant's seventh, eighth, and ninth assignments of error.

The tenth assignment complains because Mrs. Pauly was permitted to testify. She was not placed under the rule, but heard all the other testimony. She testified to seeing the door closed about sundown. We have repeatedly held that the court, in his discretion, may relax the rule. We do not think appellant's rights have been injured in this respect.

His eleventh assignment complains of the court's charge, wherein the jury were instructed that the slightest force is sufficient, such as the opening of a door, or the turning of a button. We do not think there is any error in this charge. Sparks v. State, 34 Texas Crim. Rep., 86.

The twelfth assignment complains of the court charging on nighttime burglary. We have frequently held that under an ordinary indictment for murder in the first degree proof may be offered of murder committed by any felonious act, such as in the perpetration of burglary; and the evidence in this case discloses the fact that burglary was committed at night, and it was not error for the court to charge on night time burglary. White's Ann. Penal Code, sec. 1252.

In his thirteenth assignment appellant complains because the court failed to charge on circumstantial evidence. An inspection of the facts shows that the witnesses Bert McBride, Mrs. M. E. McBride, and Mittie McBride testify to appellant's confession of having committed the crime. His admission of guilt to them was direct, and not circumstantial, evidence; and it is only where evidence is wholly circumstantial that the court is required to so charge. Glover v. State (Texas Crim. App.), 46 S. W. Rep., 824.

Appellant's fourteenth assignment is: "The court erred in failing and refusing to charge the jury, in effect, that before they could find defendant guilty of murder in the first degree, they must first find from the testimony that the killing took place under circumstances which, if no burglary had been committed, the killing would have been murder in either the first or second degree." There was no error in the court's failure to give this charge: nor was there any error in the court's failure to charge on manslaughter, nor does the evidence raise the issue of self-defense.

Appellant's eighteenth assignment complains of the action of the court in submitting the question as to whether a burglary was being committed, because the proof shows that the burglary, if any, was committed and completed at the time of the killing, and that defendant was trying to escape. We do not agree to this contention. The record discloses that, if appellant is the party who committed the homicide, he was in the smokehouse at the time he fired the shot; that some of the meat was on the outside, and some on the inside, in appellant's sack. The mere fact that he

had previously opened the door does not prove that the burglary was completed. He had not left the house, nor had he taken anything away. The evidence shows that he was in the very act of committing burglary at the time the shot was fired.

Appellant's twentieth assignment contends that the court failed to instruct the jury, in effect, that they must believe that the killing occurred under circumstances that would amount to murder either in the first or second degree, before they could find defendant guilty of murder in the first degree on account of the fact that there was a burglary committed.

The twenty-first assignment complains of the court's charge, wherein the court tells the jury that if they believe, from the evidence, beyond a reasonable doubt, that defendant committed the offense of burglary, etc., for the purpose of committing the offense of theft, etc., and that while he was in the act of committing said offense of burglary, with a pistol he shot and killed J. F. Pauly, they will find defendant guilty of murder in the first degree. Appellant's objection to this charge is because the same tells the jury that, if appellant killed Pauly, he would be guilty of murder, irrespective of the question as to whether—first, he had any intention to kill the said Pauly; second, as to whether the killing occurred by accident; third, as to whether the killing occurred under circumstances that would have made out negligent homicide of the second degree; and, fourth, as to whether the killing occurred under such circumstances as would have made it manslaughter or self-defense. We will consider these two assignments together. We have read carefully the able brief of appellant's counsel on this and other questions, and also examined the authorities cited. In the case of Pharr v. State, 7 Texas Crim. App., 477, it will be seen that the defect in the charge there complained of was the failure of the court to define malice. Again, in Tooney v. State, 5 Texas Criminal Appeals, 188, the court said: "All murder committed by poison is murder in the first degree; not all homicide or killing, because all killing is not murder; nor is all unlawful killing murder. But the offense committed must be murder,—murder in its legal, technical sense,—which is made distinguishable from every other species of homicide by being an unlawful killing, actuated by malice aforethought, either express or implied. This essential ingredient, 'malice aforethought,' is as necessary to constitute the crime of murder by poison as it is to constitute murder committed by other means." It will be seen, as contended by appellant's counsel, that this case, as well as the Pharr Case, supra, upholds the general proposition contended for by him. Article 711 of the Penal Code does not attempt to eliminate the element of malice from the definition of murder, nor does it intend to say that all killing by poisoning, starving, or in the perpetration of arson, rape, robbery, or burglary, is murder in the first degree; but the intent of the statute was to say that all murder committed in the perpetration of these acts was murder in the first degree. In other words, the intent of the Legislature in this regard was to say that where a party committed murder he should be guilty and punished for murder in the first degree, if it was done in the perpetration of any

of the offenses designated in said article.    In Gonzales v. State, 19 Texas Criminal Appeals, 394, it was held, "Murder committed in the perpetration of robbery is per se murder in the first degree." Again, in Sharpe v. State, 17 Texas Criminal Appeals, 497, the court said: "Counsel for defendant concedes that in Roach v. State, 8 Texas Criminal Appeals, 491, the precise question now presented was distinctly met and decided. In that case the indictment charged that the homicide was committed with express malice aforethought. Evidence tending to disclose a robbery as the motive inducing the homicide was admitted, and the court, as in this case, charged the jury 'that all murder committed in the perpetration, or in the attempted perpetration of the crime of robbery, is murder in the first degree.' It was held that there was no error in admitting the evidence as to the robbery, nor in giving the charge in relation thereto." Now, reverting to appellant's assignment wherein he complains of the charge of the court, it will be found from an inspection of the charge that the court defines malice, and then defines express malice, and says, "All murder committed with express malice is murder in the first degree, and all murder committed in the perpetration of burglary is murder in the first degree." Then, after defining the offense of burglary by night, the court proceeds as follows: "You are instructed that if you believe, from the evidence, beyond a reasonable doubt, that defendant, in the county of Hill, State of Texas, about the time charged in the indictment, committed the offense of burglary by entering the smokehouse of R. W. Pauly for the purpose of committing the offense as hereinbefore explained, and while he was in the act of committing the said offense of burglary did, with a pistol, shoot and kill J. F. Pauly, as charged in the indictment, then you will find the defendant guilty of murder in the first degree," etc..    When we recur to the facts of this case, they disclose a condition that precludes any other theory of homicide than murder in the first degree.    While it is true, as contended by appellant, that a party could commit a homicide in the perpetration of burglary, and not be guilty of either grade of murder, yet the facts before us do not disclose a state of facts that would authorize the court in charging on any other grade of homicide than murder in the first degree.    If the conclusion above stated be correct, that all murder committed in the perpetration of burglary is murder in the first degree, then when the court charges on express malice, and then follows that charge by telling the jury that if a party kills another in the perpetration of burglary, etc., such a charge is correct, if the evidence does not disclose any other theory of homicide.    Appellant's defense was that he was not at the place of the homicide, and the court properly charged on alibi.

Appellant's twenty-third, twenty-fourth, and twenty-fifth assignments of error complain of the refusal of the court to give certain special requested charges.    We do not think the court erred in this regard.

Appellant's twenty-sixth and twenty-seventh assignments are that the verdict of the jury is contrary to the law and the evidence, and not supported by the same.    We can not agree to this, but must say, without

again reviewing the facts, that the evidence amply supports the verdict. We have examined all of appellant's assignments of error, and find no error in the record. The judgment is in all things affirmed.

*Affirmed.*

HENDERSON, JUDGE (Concurring.)—I agree to the result reached on the ground that under our statute and the evidence the court was only required to charge on murder in the first degree, and there was no error in refusing to give the requested charge.

[NOTE.—Appellant's motion for rehearing, filed May 24, 1899, was overruled without a written opinion.—Reporter.]