MOLLIE TURNER v. THE STATE.

No. 13713.    Delivered February 23, 1931.
State's Rehearing Denied April 8, 1931.

The opinion states the case.

*Vickers & Campbell,* of Lubbock, for appellant.

*Lloyd W. Davidson, State's* Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for murder; penalty assessed at confinement in the penitentiary for a period of eight years.

This is the second appeal of this case. The opinion on the former hearing will be found in 112 Texas Crim. Rep., 245, 16 S. W. (2d) 127.

The controverted legal question involves the proper treatment of the testimony of the witness Esther Turner. M. B. Turner was killed at his home. Those present were Mollie Turner, the appellant, and Esther Turner, the witness. Mollie Turner had two sons, John and Claude, who were working in the field at the time of the homicide. Immediately after the killing, Mollie and Esther Turner went to John and Claude Turner and reported the tragedy to them.. Mollie Turner was weeping and Esther Turner related the circumstances which showed the killing to have been accidental, that is, that it occurred in a struggle for the possession of a pistol which the deceased was atempting to use against the appellant, Mollie Turner. John Turner was the husband of Esther Turner. From the field, all those mentioned went to the Turner home where in the barn-yard lay the body of the deceased, M. B. Turner. Cobb, the Justice of the Peace, and Sanford, the Sheriff, were there, and in their presence Esther Turner related the incidents of the tragdy in harmony with the previous statements made to John and Claude Turner. On the succeeding day Mollie and Esther Turner were arrested and placed in jail. On the day of their arrest, Esther Turner described the homicide to the witness Maddox as she had previously described it to her kindred and to the sheriff and others. This was vouched for by the testimony of the witness Maddox. Two days after the arrest, the sheriff, at the request of Joe Pennington, father of Esther Turner, conducted her from the jail to the office of Mr. Lockhart, an attorney, whom Pennington had consulted with the view of retention in the prosecution of Mollie Turner. At the office of the attorney Esther Turner related the incidents of the tragedy as she had related them on the occasions mentioned above. Her father, who was present, claimed to Lockhart that she was in fear of the appellant. This Esther Turner persistently denied in the presence of Lockhart and in the presence of her father. Efforts were made to induce her to change her statement but she declined to do so. According to Lockhart, there were several subsequent conversations with Esther Turner with the same result as above. At one of these interviews there was no one present except Esther Turner and himself, and at none of these conversations was the appellant or John Turner present. Upon the present trial, Esther Turner admitted that she had made the statements imputed to her by the various witnesses named above. Pennington, the father of Esther Turner, did not testify.

Appellant testified and related the circumstances of the killing in accord with the first statement made by Esther Turner at or near the time of the tragedy. On the present trial Esther Turner's description of the tragedy was in full accord with the State's theory that Mollie Turner murdered the deceased. Esther Turner declared that the reason she falsified in her relation of the incidents of the tragedy was she feared Mollie Turner, by whom the witness had been threatened. She testified that she first related the true facts to her husband, John Turner, on the following evening and was told by him to keep quiet; that she had to help his mother, and if she did not do so, he would kill her; that she heard her husband tell the appellant that she (Esther Turner) would not disclose the true facts. This was denied by John Turner and the appellant.

After the tragedy, Esther Turner lived with her husband at the home of his mother, the appellant, for about five years. . She then went to her father's home where she remained silent touching the matter for about eighteen months. At that time she claims to have disclosed the truth, first to her aunt and next to her father. She had sued her husband, John Turner, for divorce and he had entered a contest. Before the first trial of this case, the contest had been withdrawn and the divorce granted.

On the former trial the court declined to instruct the jury on the subject of accomplice testimony and tell them to determine whether Esther Turner was an accomplice witness. For such failure the judgment was reversed. In the opinion of the court the following language is found: "In this case Mrs. Esther Turner said, as we understand the record, that she was influenced by threats made by appellant, possibly repeated by witness' husband,—when she made the statement corroborative of appellant's story to the effect that the shooting was accidental, at the time she talked to the Turner boys in the field and the sheriff, and the justice of the peace. As we understand it, appellant was present at each of these times and places, and it would seem that the issue of duress * * * was in the case." (Turner v. State, 112 Texas Crim. Rep., 248, 16 S. W. (2d) 127, 129.

It is to be noticed that on the previous trial the record failed to show that the appellant was not present at the time the statement of Esther Turner was made to various parties recounting the incidents of the tragedy. On the trial, however, from which this appeal is prosecuted, it is made to affirmatively appear that she reiterated the statements a number of times in the absence of the appellant. From the testimony as now developed it appears that the statement was made to officers on the day of the tragedy, before the body of the deceased was removed, under circumstances apparently negativing duress and before the alleged threats to the witness were made.

The State now relies upon the testimony of Esther Turner in which she declares that she was present at the time M. B. Turner was killed and that Mollie Turner murdered him. If that be true and such is the basis of the conviction, then the statements of Esther Turner, to which reference has been made above, characterizes her as an accomplice witness. In her statements repeatedly made she declared that the death of M. B. Turner resulted from an accidental discharge of a weapon in his possession. One who knows that a crime has been committed and purposely gives aid in order that the offender may evade arrest or trial or the execution of his sentence is an accessory under Article 77, P. C. When one who is in the attitude of an accessory becomes a witness, his testimony is tested by the rule applicable to an accomplice witness. Article 718, C. C. P. See Howard v. State, 92 Texas Crim. Rep., 221, especially pp. 231-232, 242 S. W. 739, 743; Blakely v. State, 24 Texas App., 616, 7 S. W., 233, 5 Am. St. Rep., 912; Little v. State, 111 Texas Crim. Rep., 500, 14 S. W. (2d) 853.

As the record at present appears, the admissions of Esther Turner upon the trial classify her as an accomplice witness. That she made the admissions was proved by those to whom she made them and admitted by her. There is no contention that they were not made. In the present instance the elements of duress passes out of the case. Duress ceases to operate when its object is freed from its influence. Esther Turner could not have been in duress while she made the statements to Lockhart under the protection of her father and the sheriff, in the absence of the appellant and in the presence of her friends. She continued to suppress the truth, as she now declares it, while in the home of her father, separated from her husband, and disconnected from the family of the appellant for many months, and did not reveal it until in a divorce action her husband opposed her will. To amount to duress the threat or act must portend immediate injury in the event the party threatened refused to aid in the criminal act. Wharton on Homicide, p. 68. If, after the danger is passed, the person threatened continues to aid in preventing prosecution, he cannot be excused on the ground of duress. See Carlisle v. State, 37 Texas Crim. Rep., 108, 38 S. W., 991; Arp v. State, 97 Ala., 5, 12 So., 301, 19 L. R. A., 357, 38 Am. St. Rep., 137; Baxter vs. People, 3 Gilman (8 Illinois) 368; Leach v. State, 99 Tenn., 584, 42 S. W., 195; Rizzole v. Com., 126 Pa., 54, 17 Atl., 520; Paris v. State, 35 Texas Crim. Rep., 82, 31 S. W., 855. See also Servina v. State, 109 Texas Crim. Rep., 443, 5 S. W. (2d) 510.

The charge of the court should have, in appropriate language, made it clear to the jury that Esther Turner was an accomplice witness, and that no conviction could be founded upon her testimony unless her statements were corroborated by other evidence as required by Article 718,

C. C. P. Such an instruction was requested and exception reserved because of its ommission.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In our original opinion reference was made to certain statements of the witness Esther Turner with the conclusion that such statements "characterized her as an accomplice witness." It is then said in the opinion, "one who knows that a crime has been committed and purposely gives aid in order that the offender may evade arrest or trial or the execution of sentence is an accessory under Article 77, P. C. When one who is in the attitude of an accessory becomes a witness, his testimony is tested by the rule applicable to an accomplice witness."

The State calls attention to the fact that Esther Turner was a daughter-in-law of appellant and therefore could not be an accessory under Article 78, P. C. (1925) which reads as follows: "The following can not be accessories: the husband or wife of the offender, his brothers and sisters, his relations in the ascending or descending line by consanguinity or affinity or his domestic servants."

It may be conceded that the State's position in this regard is correct. See Smith v. State, 51 Texas Crim. Rep., 137, 100 S. W., 924; Fondren v. State, 74 Texas Crim. Rep., 552, 169 S. W., 411. We understand one of the contentions of the State to be that Esther Turner being excluded by the terms of said Article 78 from prosecution as an accessory, she can not be held to have been an accomplice witness as a matter of law. We think the conclusion contended for by the State does not necessarily follow. Of course, if the facts show that a witness was connected with the crime as an "accessory" under Article 77, P. C. (1925) and could be prosecuted as such, the party would by reason of the statute be an accomplice witness when called by the State to testify. But if such witness be excluded as an accessory by the terms of Article 78, P. C.—that is, if the witness could not be prosecuted as an accessory under the terms of said article—it by no means follows that said witness by his conduct might not so connect himself with the case as to characterize him as an accomplice witness as a matter of law when called by the State to testify. We think it a sound proposition ordinarily that one who would be liable to prosecution as an accessory but for the exemption of Article 78, P. C., would fall under the classification of an "accomplice witness" when called by the States to testify.

We are not able to distinguish this case from Little v. State, 111 Texas Crim. Rep., 500, 14 S. W. (2d) 853. There Ellis testified on the trial

to facts making out a case of murder against accused. His statements theretofore made to officers were that the killing was an accident, the effect being to aid accused to evade prosecution. In the original opinion in that case it was said that evidence which would characterize Ellis as an accessory would also classify him as an accomplice witness. The contention of the State on motion for rehearing there was the same as is now urged by the State in this case. There it was contended that Ellis was a "domestic servant", therefore could not be an accessory in the crime under Article 78, P. C. That contention was sustained as sound, but Ellis was still held to have been an "accomplice witness". In this case Esther Turner testified to facts which if true would make appellant guilty of murder, but her former statements were to the effect that the killing was accidental. It is the contention here that Esther Turner can not be an accessory to the crime under Article 78, P. C., because she was the daughter-in-law of appellant. That contention appears sound, but under the undisputed facts as to her statements prior to the trial we see no reason for holding other than that she was an accomplice witness. See Conant v. State, 51 Texas Crim. Rep., 610, 103 S. W., 897; Eldridge v. State, 111 Texas Crim. Rep., 451, 14 S. W. (2d) 1036.

We commend the able district attorney who filed for the State the motion for rehearing. It shows much labor expended in the investigation of authorities to which we are referred. We have carefully examined them. It must be admitted that some are confusing by reason of expressions such as "accessories" and "accomplices" when it would have been more accurate to have designated the parties referred to as "accomplice witnesses".

Believing the correct conclusion was reached in our original opinion, the motion for rehearing is overruled.

*Overruled.*