PIERSON CANTRELL v. THE STATE.

No. 17604.   Delivered June 26, 1935.
Rehearing Denied October 23, 1935.

The opinion states the case.

*T. C. Chadick* and *Elizabeth Suiter*, both of Winnsboro, *Boyet Stevens*, of Omaha, and *R. E. Bozeman*, of Quitman, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, death.

The facts amply support the verdict. They are almost without contradiction. Mr. Guy, deceased, a man sixty-eight years of age, lived alone near Edgewood, Texas, which is in Van Zandt county. He disappeared from his home on the night of June 1, 1933, and was last seen alive about 11:30 that night in a car with another man,—said by a witness who saw them to answer the general description of appellant,— going east along the highway toward Mineola, which is in Wood county, and near which place appellant lived in a tent with a woman who testified in this case. She appears to have been the mother of a baby by appellant, and her story, pieced out with other testimony, shows a revolting murder,—solely for the purpose of theft or robbery. There is no need to set out the gruesome details. The decomposed body of deceased was found some time later buried in a crude grave in Wood county near the place where appellant and said woman had been camped. The pistols of the deceased and his car were traced to appellant's possession after deceased disappeared.

Six bills of exception appear in the record. Bill 1 complains of testimony of a bank officer who testified that deceased kept considerable money in his bank at Edgewood. This witness said deceased drew out of his bank $250.00 in ten dollar bills shortly before he disappeared; also that nearly every year his bank gave its customers purses. The qualification to this bill by the court below states that deceased had a purse such as the bank gave away, which was found in appellant's possession when arrested for this crime, and was identified by a son of deceased; also that a witness swore that he saw appellant with a large roll of bills the morning after the alleged homicide. The bill shows no error.

The body of deceased when found was badly decomposed.

Among other facts of identification, Dr. Brandon, who had treated deceased for a gun shot wound in the lower leg, testified that an x-ray made of his patient showed a hole through the bone corresponding with a hole in the lower leg bone of the corpse referred to, and in his judgment they were the same. We think the evidence was properly admitted.

The next bill of exceptions complains of the refusal of the court to charge the jury that Ruth Mann, the woman with whom appellant had been living, was an accomplice as a matter of law. There is no claim that this woman was either a principal or accomplice to the killing,—but that by reason of her association with appellant afterward, her acceptance of money, etc., resulting from the sale of the pistols, etc., of deceased, and that she had made false statements interpreted as aiding appellant to evade arrest and prosecution, she was an accessory, and when a witness, an accomplice witness. The false statements were that she had given the authorities of Van Zandt county a written statement in which she claimed that appellant was at the tent with her on the night of the homicide,—a proposition which she reiterated and repeated from the witness stand on this trial, saying that he was with her that night. She testified that sometime in the night, before daylight, appellant came to the tent where she was sleeping and wanted the wagon sheet which was under the mattress on which she lay, and that when she did not at once give it to him, he threatened to shoot her with a pistol. She said he just "hunkered down" by the bed. She gave him the wagon sheet. The written statement about which she was cross-examined, as above stated, and also as hereinafter later mentioned, was not put in evidence and is not before us, hence we can not know what she said therein, nor the words in which she phrased her statement that appellant was with her that night, etc.

She was also cross-examined as to having said, in said written statement, that Bob Lockridge came with appellant in the car at the time the body of deceased was brought to where is was buried, and that he helped appellant bury it. This statement she admitted on the trial was false insofar as Lockridge's participation in the bringing of the body and its burial. She said she had so stated because appellant told her to. It is not quite clear how the fact that she may have said another man came with appellant at said time and helped him to bury the body, would exculpate appellant or negative his guilt, but be that as it may, the writer has grave doubt of the

sufficiency of the testimony of this unfortunate ignorant woman,—living with appellant who was the father of her baby, and going away with him after the killing and staying with him, sharing what he had, and making the statement shown to have been made by her,—to show that she was an accomplice as a matter of law. Sec. 712 of Branch's Annotated P. C. cites many cases as supporting two propositions which shed light on the question raised by this bill of exceptions: We quote: "When there is no doubt that the inculpatory witness is an accomplice, the court should charge the jury peremptorily that such witness is an accomplice." Armstrong v. State, 33 Texas Crim. Rep., 423, and others are cited by Mr. Branch. Then follows this proposition: "It is not always reversible error to leave it to the jury to determine whether a witness is an accomplice, although such fact be apparent." Zollicoffer v. State, 16 Texas App., 317, and others are cited in support of this proposition. In Elizando v. State, 31 Texas Crim. Rep., 237, this court,—Judge Davidson speaking,—says:

"But in the next place, if it be conceded that the facts adduced raise such an issue in connection with her testimony, still it would not be incumbent upon the court to charge, in affirmative terms, that she was an accomplice.

"It was sufficient to submit that question to the jury as a question of fact to be determined by them, which was done. In cases where that fact is not admitted, or placed beyond doubt, it is not improper to submit such question, under appropriate instructions to the jury, to be determined by them. Zollicoffer v. State, 16 Texas Ct. App., 312; White v. State, 30 Texas Ct. App., 653."

This language is quoted and approved in Vails v. State, 59 Texas Crim. Rep., 342; Standfield v. State, 84 Texas Crim. Rep., 446; Sims v. State, 95 Texas Crim. Rep., 164, and others.

Bohannon v. State, 84 Texas Crim. Rep., 8, was reversed on its facts for failure to tell the jury that the prosecuting witness was an accomplice. In differentiating that case, Judge Morrow says: "There are cases in which it has been decided that the fact that the court submitted to the jury the question as to whether a witness was or was not an accomplice was not reversible error, even though the evidence was such as to justify a charge that he was an accomplice as a matter of law. In these cases it will be found that there were facts proved or in evidence which would have authorized the jury to have concluded that the witness, if an accomplice, was sufficiently corroborated. These cases are distinguishable

from this one by reason of the fact that here, if the jury determined that the prosecutrix was an accomplice, there is an absence of sufficient corroborating testimony to support the verdict. In other words, in this case, if the jury determined, in response to the charge, that the prosecutrix was not an accomplice, their finding could be supported alone upon evidence which was illegally admitted. If they found that she was an accomplice, the verdict could not stand because the evidence of corroboration was insufficient." This case is cited on this point with approval in Lopez v. State, 92 Texas Crim. Rep., 98. It seems very plain that the instant case belongs in the category with the Elizando, et al. cases mentioned and not in that of the Bohannon case, for in the instant case the corroboration was overwhelming,—in fact so much so as to make it probably sufficient to convict without the testimony of the alleged accomplice. In this case the court submitted to the jury the question as to whether or not said woman was an accomplice, in language apparently acceptable to the accused. Nothing in the cases of Littles v. State, 14 S. W. (2d) 853, or Turner v. State, 37 S. W. (2d) 747, or any other case known to the writer, contravenes the doctrine so announced. This bill manifests no error.

Bill 5 complains of the failure of the court to charge on circumstantial evidence. The woman, Ruth Mann, testified that appellant told her he killed deceased, and described to her the manner in which he did so. This would remove the case from the domain of circumstantial evidence. Heard v. State, 24 Texas App., 111; Hedrick v. State, 40 Texas Crim. Rep., 536; Thompson v. State, 33 Texas Crim. Rep., 222; Kidwell v. State, 35 Texas Crim. Rep., 267.

Bill 7 sets out part of the testimony of Ruth Mann, the alleged accomplice witness, and avers that the charge of the court was excepted to because it "Nowhere instructs the jury upon the issue that if Ruth Mann is the common law wife of defendant, she is incompetent to testify against him." We find no bill of exceptions in the record complaining of the admission of the testimony of this witness on the ground that she was the wife of the accused. Her testimony covers some twenty-three pages of the statement of facts, and is bare of any reference to any marriage agreement between herself and appellant, but on the contrary abounds in references to his promises to marry her, and her expectation that he would marry her, which promises he did not carry out;

and she testifies in so many words that she knew all the time she was not married to him. She further testified that she had never had a husband; had never considered that she had ever been married. She further said appellant came to see her one day and asked her how she would like to live at Edgewood, and she said she did not know. He said nothing else, but later that day he told her to have everything packed up and he would be after her in a few days, and that was the condition on which she started to living with him. We think the learned trial judge well within his rights in not responding to appellant's exception, and in not charging on the subject. No special charge was asked in regard to this question.

No issue was made in testimony during the trial on the question of venue. As above stated, the last time deceased was seen alive he was in a car with a man who in a way resembled appellant, leaving the town of Edgewood in Van Zandt county, Texas, on a highway and going toward Mineola in Wood county, Texas, near where appellant lived, and where the body of deceased was later found. At the conclusion of the testimony appellant presented a special charge to the court asking that the jury be instructed to acquit if they found the homicide was committed in Van Zandt county, or if they had a reasonable doubt thereof, which was refused, but no exception was taken to such refusal, and the point was not brought forward in any separate bill. Art. 847, C. C. P., in so many words requires this court on appeal to presume that the venue was proven in the court below, unless it was made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions approved by the judge of the court below. This we take to mean that unless the evidence affirmatively shows venue elsewhere, it will be presumed to have been in the county where laid. In Sherman v. State, 83 Texas Crim. Rep., 205; Bashara v. State, 84 Texas Crim. Rep., 263; Bargas v. State, 86 Texas Crim. Rep., 217, and Cone v. State, 89 Texas Crim. Rep., 587, we laid down the rule that upon appeal it will be presumed that venue was proved unless it was a question of serious import upon the trial, or unless contested or verified in a bill of exceptions. In McGlasson v. State, 38 Texas Crim. Rep., 351, this court said that on appeal we will presume venue was proved unless the contrary is shown by the record. In Park v. State, 78 Texas Crim. Rep., 131, we said we would not consider the question of venue as raised where no bill of exceptions was

taken. See Ex parte Haley, 88 Texas Crim. Rep., 649; Hibbitt v. State, 90 Texas Crim. Rep., 527, and Hughes v. State, 91 Texas Crim. Rep., 642, in which we said that where no issue was made during the development of the testimony touching venue, the Court of Criminal Appeals will presume that it was proved, in the absence of a bill of exceptions. In Tullos v. State, 99 Texas Crim. Rep., 551, we said that under Art. 847, supra, lack of evidence showing venue which was raised for the first time in motion for new trial and not made during the trial of the case, will not be considered on appeal.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We think it unnecessary to discuss all the points urged in appellant's motion for rehearing as they were all considered in our original opinion. We content ourselves by adverting only to the contention that the trial court should have instructed the jury that Ruth Mann was an accomplice witness as a matter of law, instead of submitting such question to the jury.

There is nothing in the record which raises any issue that said witness was a party to the killing of Guy by any act or ommission on her part at the time of or prior to the homicide. She learned of the killing from appellant after it occurred, and not until they had gotten some distance from where they were camped at the time of the killing. The fact that she did not voluntarily disclose such information to the authorities would not render her an accomplice witness as a matter of law. It is not in evidence that she at any time when interrogated by officers made to them false statements regarding the disposition by appellant of the pistols, watch or other property of deceased, or of the license plates removed by appellant from the automobile of deceased. Upon cross-examination of such witness it was elicited that she had made a written statement to the sheriff and district attorney; also, that she had testified as a witness before the grand jury in both Wood and Van Zandt counties. She was not asked about her testimony before said grand juries, nor is there any contention that in the evidence there given were any statements made by her favorable to appellant which might characterize her

as an accomplice witness. As we understand the record, it is sought to show by admissions elicited from her in cross-examination that in the written statement referred to she told the officers certain things favorable to appellant, which would mark her an accomplice witness as a matter of law under the principles announced in Turner v. State, 117 Texas Crim. Rep., 434, 37 S. W. (2d) 747; Benavides v. State, 123 Texas Crim. Rep., 583, 60 S.W. (2d) 436; Orr v. State, 124 Texas Crim. Rep., 252, 61 S. W. (2d) 490; Littles v. State, 111 Texas Crim. Rep., 500, 14 S. W. (2d) 853; Tipton v. State, 72 S. W. (2d) 290. The opinion in the latter case noted makes it clear that a false denial to officers of knowledge that a crime has been committed does not necessarily make one so denying an accomplice witness as a matter of law, but there must ordinarily be an affirmative statement of fact by said witness which raises a defense for accused, or which indicates an effort to shield or protect accused and aid him in evading arrest or to escape prosecution. We conclude from the record that it was sought on cross-examination of the witness Ruth Mann to secure from her an admission that she had said things in the written statement referred to which sought to shift the killing of Guy from appellant to Bob Lockridge, and claim an alibi for appellant. The statement of facts shows the following questions to and the answers from the witness on cross-examination.

"Q. At the time you made this signed statement to Mr. Burnett and Mr. Dawson, you told them in that statement that Bob Lockridge came to your camp and gave a signal, blew his horn, gave a signal, that you were sleeping in that camp with Pierson Cantrell, is that right? A. No, sir.

"Q. In that statement, you said that Pierson Cantrell got up and went to see Lockridge and that Lockridge was there with an automobile and had the body of Frank Guy in it; isn't that right? A. No, sir.

"Q. You further testified that Bob Lockridge and Pierson Cantrell brought that body—I mean in that statement—they brought that body and buried it behind your camp, didn't you? A. Yes, sir.

"Q. You said both of them did that, didn't you? A. Yes, sir.

"Q. You further said in that statement that Bob Lockridge left and left all this stuff with Pierson Cantrell, didn't you? A. No, sir.

"Q. In that statement, you said that Bob Lockridge had been in your camp the day before? A. No, sir. I did not say he had been there a few days before either. I did not say that Pierson Cantrell and Bob Lockridge had made an agreement for Bob Lockridge to go and steal the automobile and bring it to Pierson Cantrell to take and sell. I have testified before two grand juries.

"Q. You have never told this the same way any time you have told it? * * * A. In that written statement that I made, I did say that Pierson Cantrell was at the camp with me that night, the night in question on June 1, 1933, or May 30th. He was in camp with me that night."

On re-direct examination witness explained that the reason she told the officers that Lockridge helped appellant bury the body was because appellant had told her to make such statement. As said in our original opinion in substance, it does not appear from the record in what way the attempted connection of Lockridge with appellant in burying the body raised any defensive issue for appellant; or was calculated to aid him in evading prosecution. From the examination set out it seems clear that witness did not in the statement made to the officers claim that appellant was sleeping with her in their camp at the time Guy was killed. On further re-direct examination she testified in effect that she made no such statement to the officers. Upon the trial the witness testified that appellant left the camp about four o'clock in the afternoon and came back before "good daylight." It is reasonable to conclude from the entire record that whatever she testified on the trial or stated to the officers had reference to his return to the camp while it was still night; if the construction be given her testimony as urged by appellant then it would appear that the most that can be said about it is that on cross-examination she admitted making a statement to the officers about appellant being in camp on the night of the killing, and then on re-direct examination denied making such statement. It has been held many times if a witness testifies one way on direct examination and another on cross-examination it is the province of the jury to determine which time the witness was speaking the truth. So under all the facts before us we remain of the opinion that the court below was not in error in letting the jury determine the question whether Ruth Mann was an accomplice witness.

250

Believing the case to have been properly decided originally, appellant's motion for rehearing is overruled.

*Overruled.*