## LUTHER M. NISBET V. STATE

No. 30,212. December 16, 1959
Motion for Rehearing Overruled February 17, 1960
Petition for Writ of Certiorari to the Supreme Court of the United States
Denied June 20, 1960—Filed June 25, 1960

DAVIDSON, Judge, dissented.

*Percy Foreman, Joe Ed Winfree, Sr., Luther M. Nisbet, pro se, Holvey Williams* and *Thomas M. Ryans,* Houston, 2, for appellant.

*Dan Walton,* District Attorney, *Thomas D. White, Samuel*

2

*H. Robertson, Jr.,* Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is conspiracy to commit a felony (Art. 1622 P.C.); the punishment, four years.

The indictment is in one count and alleges that appellant and Joe L. Angle, Jr., did "unlawfully conspire, combine, confederate and agree, and did enter into a positive agreement together and between themselves" to unlawfully take and steal money, and property of the value over $50 from the city of Houston; that they further conspired to take and steal money, funds and checks of the value of more than $50 from various unknown persons, and that they further conspired to accept and agree and consent to accept bribes, Joe L. Angle, Jr., being an executive officer of the city of Houston.

The indictment continued at length the allegations as to the agreement setting out that Joe L. Angle, Jr., and appellant agreed they would accept money from persons who would sell land and property to the city of Houston; that Joe L. Angle, Jr., in his official capacity as Superintendent of the Land Acquisition Department, would make recommendations relating to the purchase and the consideration to be paid for such property so as to cause and influence the purchase price thereof to be increased, in consideration for which appellant and Joe L. Angle, Jr. would receive one-half of the increase, all in violation of Joe L. Angle's duties as an executive officer of the city of Houston.

An indictment charging a conspiracy to commit a felony need not allege the offense intended with the particularity necessary in an indictment charging the commission of the intended offense. Carter v. State, 135 Tex. Cr. R. 457, 116 S.W. 2d 371.

The crime of conspiracy is a single offense, though the parties enter into a positive agreement to commit one or many felonies.

A conspiracy to commit a number of crimes may be included in a single count of the indictment without rendering the indictment duplicitous. The gist of the crime being the conspiracy,

it may include a single offense or several. Frohwerk v. U.S., 249 U.S. 204, 209; Norton v. U.S., 295 Fed. 136; Outlaw v. U.S., 81 Fed. 2d 805.

Appellant does not question the rule stated, but contends that the indictment is duplicitous in that it alleges three separate and distinct conspiracies, namely:

(1) A conspiracy to commit felony theft of money and property from the city of Houston,

(2) A conspiracy to steal money and property from unknown persons, and

(3) A conspiracy to accept or agree to accept a bribe.

We have concluded that the indictment alleges a single conspiracy entered into on or about April 15, 1954, to commit a felony; the offense intended being felony theft of money and property belonging to the city of Houston, felony theft of money and property from persons whose names and descriptions were unknown, and the felony offense of accepting and agreeing to accept bribes. No conspiracy was alleged to have been entered into any time other than on or about April 15, 1954.

Under the indictment, it was not necessary that the evidence establish that the conspiracy entered into on or about April 15, 1954, extended to all of the intended offenses. The state abandoned the allegation that the intended offense was felony theft from unknown persons, and the court's charge required the jury to find that appellant and Joe L. Angle, Jr. entered into a conspiracy to steal money or property of the value of more than $50.00 from the city of Houston, or that they conspired to accept and agree to accept bribes in the manner alleged in the indictment. A verdict of guilty was all that was required. Floyd v. State, 164 Tex. Cr. R. 50, 296 S.W. 2d 523; Stevens v. State, 157 Tex. Cr. R. 19, 245 S.W. 2d 499; McArthur v. State, 132 Tex. Cr. R. 447, 105 S.W. 2d 227.

The elimination of the allegation as to conspiracy to steal property from unknown persons by the court's charge was not unfavorable to appellant. The charge does not support the defense theory that three separate conspiracies were alleged rather than a single conspiracy to commit three separate offenses, and the state was not required to prove that appellant

and Joe L. Angle, Jr., conspired to steal money from the city of Houston and from unknown persons and also conspired to accept and agree to accept bribes.

Bill of Exception No. 1 complains of argument, the complaint being that the district attorney, in his closing argument, made a direct and an indirect reference to the defendant's failure to testify.

The court qualified the bill of exception, in part, as follows:

"Mr. Ryan, attorney for Defendant, in his argument to the jury had stated that a number of the State's witnesses were either liars or crooks as they had participated in the transactions with the Defendant and Joe L. Angle, Jr., and, in fact, the Court had charged that such witnesses were accomplices as a matter of law.

"Mr. Walton, who made the closing argument for the state, discussed the testimony of such witnesses and then facing the defendant and pointing his finger at him continued with the following argument:

" 'Now, there was one matter here about Mr. Ryan's argument that amused me. That was the matter that these witnesses who came here and testified to their participation in these transactions, or whatever part they played in them, that they were either liars or crooks. I think you can easily understand and can discern for yourselves from having seen them, and heard their testimony, and having had the opportunity to review the numerous exhibits in the record, you are completely satisfied they are not liars.

" 'Now, Mr. Ryan says if you believe them they are crooks. Then I ask you Mr. Ryan and I ask you, Mr. Nisbet, what does this make Mr. Luther M. Nisbet and Joe L. Angle, Jr.?'

"Mr. Ryan then made an objection as shown in Defendant's Bill of Exception. The Court overruled the motion for mistrial as shown in the bill, to which action the defendant excepted."

"The Court did not consider the complained of argument as either a direct or indirect reference to the failure of the defendant to testify, but construed the question as a rhetorical question in the course of legitimate argument.

"At the conclusion of the argument and before the jury was retired the Court out of an abundance of caution instructed the jury 'You will not consider and strike out what the District Attorney said when he asked a question of Mr. Nisbet.'

"Defense counsel then stated: 'We nevertheless reserve our exception to it, because it is of such a nature that it cannot be cured by instruction.' "

The bill as qualified certifies that the trial judge, who heard the argument and observed the district attorney's actions, did not consider the complained of argument to be a reference to appellant's failure to testify, but construed the question as rhetorical; made in the course of legitimate argument, and not a question calling for an answer by appellant or anyone else.

In the light of the trial judge's certification, to which there was no exception, we find no reversible error in Bill of Exception No. 1.

Appellant complains that the trial judge refused to order the district attorney to produce the grand jury testimony of the accomplice witness Joe Mitchell Sam, and declined to permit him to prove by the district attorney that he had such a statement.

Sam had testified that he had given certain checks to Angle under an agreement to pay Angle one-half of the amount by which an appraisal of property acquired from his father's estate through him by the city of Houston was raised above the first appraisal.

On cross-examination Sam was asked whether or not he had told the grand jury that such checks were payments for appraisal work Joe L. Angle, Jr., had done for Sam Realty Company and were in no wise connected with the acquisition by the city of Houston of properties of his father's estate.

The witness answered that he did not remember that testimony, and did not recall exactly what was said.

The complaint as to the court's ruling was not pursued after verdict. All that appears happened in the jury's presence. There is nothing in the record to show that the witness' testimony before the grand jury was in fact reduced to writing, and noth-

ing to show that the witness' testimony before the grand jury was at variance with his testimony at the trial.

Under the record we hold, consistent with the prior holdings of this court, that the trial judge did not err in these rulings.

Evidence offered by the state to establish the conspiracy included: (1) The testimony of Joe Mitchell Sam relating to five tracts of land acquired from the Jack H. Sam estate represented by him. He testified to an agreement made with him by Joe L. Angle, Jr., under which the city's offer was raised from the previous offer, one-half of the increase being paid to Joe L. Angle, Jr., by the witness Sam.

(2) The testimony of Jack Morriss to the effect that appellant obtained an increase in the city's offer for a tract of his land, in return for which appellant said he expected a mink coat but after the city paid for the land appellant demanded and received from him $3500.00.

(3) The testimony of Richard M. Strauss to the effect that what was represented to be a final offer for property belonging to his mother-in-law the amount was raised under agreement with appellant that the additional amount "we would split with Mr. Nisbet," and $675.00 was paid to appellant in cash. Strauss further testified that under a similar agreement an offer made for property belonging to his wife was raised and the increase divided with appellant, in accordance with their agreement, and paid to appellant in cash.

The court in his charge instructed the jury that the witnesses Joe M. Sam, Jack Morriss and Richard M. Strauss were accomplices.

Another witness for the state was Phillip A. Lester who testified that, in connection with the city of Houston acquiring property owned by Mrs. Kathryn Carroll, part of which was occupied by the C & G Paper Company of which he was president, the paper company received a check in the sum of $6,000.00 for his assistance in closing the deal with the city; that he employed appellant as his attorney and for his services in the matter gave him two checks, one for $4,000.00 and the other for $500.00.

Appellant objected to the court instructing the jury that

Phillip A. Lester was an accomplice witness and the instruction was not given.

Another transaction proved by the state related to the acquisition of a tract of land by the city from Harry Levine and his wife, both of whom testified.

The Levines, according to their testimony, signed an agreement with another agent of the city who worked under Joe L. Angle, Jr., under which they would sell their property to the city for some $25,000.00. Thereafter, appellant came to them and said they were to get more money. Harry Levine testified as to the agreement:

"A. The only conversation we had was I should get a little increase in my property; *a little increase of $5,000.00 Out of that $5,000.00 we paid a commission or something like that, which I didn't know what it was.*

"Q. Pay a commission? A. And I agreed.

"Q. *Paid a commission to who? A. To Mr. Nisbet.*

"Q. This man over here? A. Yes sir. *He's a City employee. Who am I to say 'yes' or 'no'. It was approached me I should pay a commission on it, and I agreed, and that's all there was to it.*

"Q. Did he say how much the commission was to be? A. Yes sir.

"Q. What was it to be; how much was it to be? A. Two thousand and eighty something dollars.

"Q. Two thousand and eighty something dollars, you say? A. Yes sir."

Mrs. Levine testified, on this point:

"A. He (appellant) came to the store and brought a paper out and said we were to get more money, but it would cost us a commission of $2,380.00.

"Q. Is that this gentleman seated here that came and told you that? A. Yes sir.

"Q. Did he have a paper with him for you to sign? A. Yes sir. We signed it right there.

"Q. He said you were to get more money but you would owe him a commission of what? A. $2,380.00.

"Q. Did you and your husband agree to pay him that commission for the increase in price? A. Yes sir. We agreed to pay him that commission, yes sir."

* * * * * *

"Q. And for what reason did you give Mr. Nisbet $2,380.00 cash there at the Citizens State Bank, Mrs. Levine? A. For no particular reason. I just figured once I was at the bank I just took it out in cash.

"Q. What had he done for the $2,380.00? A. It was supposed to be commission. I thought it was commission we were paying *to the City*. I didn't know.

"Q. Commission for what? A. I guess for the larger amount we were getting for the property.

"Q. Commission for the larger amount of money you were getting for the property? A. I guess so. I don't know.

"Q. That's what he had told you it was when you talked to him? A. Yes sir."

The court, in his charge, submitted to the jury the issue of whether Harry Levine and Mrs. Levine were accomplice witnesses. Appellant excepted to the charge and here complains that the court should have instructed the jury that they were acccomplice witnesses as a matter of law.

Under the testimony quoted it does not appear that these witnesses were shown beyond all question to be accomplices. If, however, they were accomplices, the court's failure to so charge does not call for reversal. The law relating to this subject is thus stated in Section 741, Branch's Ann. P.C. 2d Ed.:

"When there is no doubt that the inculpatory witness is an accomplice, the court should charge the jury peremptorily that such witness is an accomplice * * * ."

Many cases are cited. See also Bohannon v. State, 84 Tex. Cr. R. 8, 204 S.W. 1165; and Lopez v. State, 92 Tex. Cr. R. 97, 242 S.W. 212.

"It is not always reversible error to leave it to the jury to determine whether a witness is an accomplice although such fact be apparent."

Many authorities are cited, including Cantrell v. State, 129 Tex. Cr. R. 240, 86 S.W. 2d 777. The latest case cited is Phillips v. State, 144 Tex. Cr. R. 566, 164 S.W. 2d 844.

The opinion in Cantrell v. State points out the distinction between the line of cases referred to as Elizando v. State, 31 Tex. Cr. Rep. 237, 20 S.W. 560 et al cases, where the submission of the issue was held sufficient, though the evidence made it apparent that the witness was an accomplice, and the Bohannon case (84 Tex. Cr. Rep. 8, 204 S.W. 1165, 1167) where the submission of the issue was held not sufficient.

The distinction pointed out in Bohannon v. State, by Judge Morrow, was that in other cases facts were in evidence which would have authorized the jury to conclude that the witness, if an accomplice, was corroborated; whereas, in Bohannon, if the jury determined that the prosecutrix was an accomplice, there was not sufficient corroboration and the verdict could not stand.

Harrell v. State, 107 Tex. Cr. R. 8, 294 S.W. 597, holds the failure to peremptorily instruct that the witness is an accomplice is reversible error where the testimony of the witness was essential to conviction.

The testimony of Harry Levine or his wife was not essential to the conviction herein, and was not the sole corroboration of the testimony of accomplice witnesses. If they were accomplice witnesses, there was abundant evidence to corroborate their testimony.

Hibbetts v. State, 136 Tex. Cr. R. 170, 123 S.W. 2d 898, presents a situation quite similar to that in the case before us.

Hibbetts was a deputy tax collector and was prosecuted for misapplication of public funds.

The Witnesses Hieserman and Shaffer went to the courthouse and contacted Hibbetts. Shaffer called Hibbetts into the corridor where Hieserman informed him that he wanted to pay his taxes. He exhibited a statement of the amount of taxes due.

Hibbetts went back into the office, but returned shortly with Hieserman's tax receipt showing total amount of $153.78. He told Hieserman he would give him a discount of $25.00 and, upon payment of $128.78, appellant delivered the receipt to Hieserman. None of the money found its way into the county treasury.

The court held that the fact that Hieserman paid less than the full amount owed by him would not make him an accomplice as a matter of law.

The question of Hieserman's complicity was submitted to the jury and this court held there was no error.

What has been said disposes of the propositions presented by brief and oral argument of counsel for appellant. We deem it unnecessary to fully state the evidence offered by the state in addition to that mentioned. Suffice it to say that the evidence warranted a finding by the jury that the portion of the raise in the consideration paid by the city under the appraisements and recommendations of appellant and Joe L. Angle, Jr., were divided between them. Records and other evidence showed that Joe L. Angle, Jr., was an executive officer of the city of Houston (Angle v. State, 165 Tex. Cr. Rep. 305, 306 S.W. 2d 718) and that the duties of Joe L. Angle, Jr., and appellant were to acquire land for the city of Houston, usually for streets and highways.

Appellant contends that such evidence shows neither theft from the city of Houston nor the acceptance or agreement to accept a bribe. It occurs to us that the evidence is sufficient to support a finding that appellant and Joe L. Angle, Jr., conspired to commit and did commit both such felonies.

The judgment is affirmed.

DAVIDSON, Judge, (dissenting).

So far as I know or have been able to ascertain, it has always been the law of this state that two or more felony offenses can not be alleged, charged, or joined in a single count of the

indictment and that an indictment which violates that rule is subject to be quashed and dismissed for duplicity, at the motion of the accused.

I will not cite the individual cases so holding, but refer to the cited cases under Notes 41 through 63 of Art. 417, Vernon's C. C. P.

The rule against duplicity has been destroyed here, for this court has now committed itself to the holding that three separate and distinct felony offenses may be alleged, charged, and joined under a single count of the indictment.

To such holding I cannot agree, because the rule against duplicity is correct and founded and based upon the principle that one accused of crime is entitled to be tried solely for the offense for which he is upon trial and not for any other offenses.

The indictment in this case is clearly duplicitous. It charges in the one and single count three separate and distinct felony offenses, namely: (a) that Luther M. Nisbet and Joe L. Angle, Jr., conspired and entered into a positive agreement to steal money, property, and funds in excess of the value of $50 from the city of Houston; (b) that Luther M. Nisbet and Joe L. Angle, Jr., conspired and entered into a positive agreement to steal money, checks, and funds in excess of the value of $50 from various unknown persons; (c) that Luther M. Nisbet and Joe L. Angle, Jr., conspired and entered into a positive agreement that Joe L. Angle, Jr., as an executive officer of the city of Houston, would accept and agree and consent to accept bribes for and in the performance of his official duties.

A conspiracy is an agreement entered into between two or more persons to commit a felony. Art. 1622, P. C. In clear and unmistakable terms that statute says that an agreement to commit a felony is a complete offense. It does not say "several offenses" or "various felonies." It says that each and every time two persons enter into a positive agreement to commit a felony that statute has been violated.

Attention is directed to the fact that to constitute a violation of the conspiracy statute it is not necessary that the offense agreed to be committed was actually ever committed, for the offense of conspiracy is complete with the agreement to commit it (Art. 1623, P. C.).

Stealing more than $50 from the city of Houston is a felony offense; so, also, is the stealing of that amount of money from unknown persons. Those offenses are separate and distinct from each other and could not be, under any circumstance, the same offense.

An agreement by a municipal officer of the city of Houston to accept a bribe is a felony (Arts. 159 and 160, P. C.) and is separate and distinct from the offense of conspiracy to steal.

To me, it is inconceivable how it can be said that the indictment in this case did not charge the commission by appellant of three separate and distinct felonies in the same count. Appellant's timely motion to quash because it was duplicitous should have been sustained.

The validity of the indictment as against the contention that it was duplicitous is sustained by my brethren upon the proposition that there was but one agreement between the alleged co-conspirators which embodied and covered the agreement to commit the three felonies stated in the indictment. In other words, it is the holding of my brethren that there was but one agreement between the co-conspirators which covered in one agreement the commission of the three felonies.

The fallacy of such reasoning is, in my opinion, demonstrated by the statute defining conspiracy (Art. 1622, P. C.) which says —and of necessity must be construed as saying—that each and every agreement to commit a felony is a violation of that statute.

Such being true, any agreement to commit a felony constituted a separate violation of the conspiracy statute, regardless of whether that agreement covered and included the commission of other felonies.

However, if the holding of my brethren in saying "We have concluded that the indictment alleges a single conspiracy" be accepted as a correct determination of the law, there exists this further—and, to me, insurmountable—obstacle precluding an affirmance of this conviction upon that theory:

In the first place, the trial court in his charge told the jury that the allegation in the indictment of a conspiracy to steal money, funds, and checks from unknown persons had been abandoned by the state and under no circumstances could a conviction be predicated upon that allegation.

So, one-third of the single and inseparable agreement alleged in the indictment was not only unproven but the allegation was abandoned by the state.

In addition, the trial court in his charge to the jury authorized appellant's conviction if the jury believed that he and Angle conspired to steal more than $50 from the city of Houston, or if they believed that he and Angle conspired to accept or agree or consent to accept bribes.

Thus, as the case was submitted by the trial court, the "single conspiracy" agreement which my brethren say existed was completely destroyed and the alleged agreement to commit that offense was determined by the trial court to consist of three separate and distinct agreements, each separate from the other.

When the trial court submitted the case to the jury as he did, he made the judicial determination that the indictment was duplicitous and charged three separate and distinct felonies in the one or single count of the indictment.

If the case was to be submitted to the jury, as was done the trial court should have sustained the motion to quash the indictment.

In addition to what I have just said, I call attention to the fact that one of the cardinal rules touching the trial of a criminal case in this state is that the material allegations of the indictment must be sustained and supported by the evidence. Unless those allegations are so supported, a conviction can not result. The authorities supporting that time-honored rule of law will be found collated under 21A, Tex. Digest, Key 171, p. 212.

If the indictment alleged a "single conspiracy" covering three separate felonies, as my brethren say, then it was the burden of the state to establish by the evidence that single conspiracy, as alleged, and in order to convict the jury would have been required to find that such single agreement had been established by the evidence.

Here, this was impossible, for when one of the elements of the single and inseparable agreement was abandoned, the whole of the single agreement was destroyed. Moreover, that single agreement was further destroyed when the trial court authorized a conviction upon either of the other two elements remaining.

Upon the theory which my brethren adopt, the rule requiring that the allegations and proof correspond is directly applicable and controlling and requires a reversal of the conviction.

Under this record, the state finds itself impaled upon the horns of a dilemma:

If the indictment was susceptible of the construction given thereto by the trial court when he submitted the case to the jury—that is, that the agreement alleged therein was to commit three separate felonies and guilt could be predicated upon a finding of the existence of an agreement to commit any one of those felonies, then the indictment was duplicitous and should have been quashed at the motion of the appellant.

On the other hand, if the indictment be given the construction which my brethren give thereto—that is, that the indictment alleged only a "single conspiracy" embodying and consisting of the commission of three separate felonies under the one and single agreement, then the facts do not show a single agreement, the trial court submitted no such agreement to the jury, by its verdict the jury did not find that such agreement was entered into, and the state destroyed that allegation by abandonment.

It appears to be wholly immaterial which horn of the dilemma is taken. The result is inevitable that this conviction can not stand.

I call attention to this further matter:

Harry Levine and his wife were accomplice witnesses as a matter of law, and the jury should have so instructed.

According to their own admissions, they knew that they were being paid $5,000 more for their property than they had agreed to accept. They knew, or must have known, that this money did not belong to them. They knew, or must have known, that it belonged to the city of Houston. Notwithstanding such facts, they accepted the money and paid approximately $2,380 to the appellant and kept the remainder. So far as this record is concerned, they had that money at the time they were testifying in the case and their testimony showed that, along with them, appellant was guilty of stealing $5,000 from the city of Houston. See: Byrd v. State, 90 Tex. Cr. R. 418, 235 S.W. 891.

According to their testimony, the witnesses were just as guilty of stealing as was the appellant.

In fact, the theft could not have occurred without the active participation of the witnesses.

I respectfully dissent.