FIDEL CONTRERAS, *alias* RAUL CONTRERAS, *alias* FIDEL LOPEZ, *alias* RAUL ESCONTRIAS, *alias* FIDEL ESCONTRIAS.
V. THE STATE.

No. 22009. Delivered May 6, 1942.
Rehearing Denied June 10, 1942.

The opinion states the case.

*Joseph J. Roybal,* of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Gill L. Newsom,* Assistant District Attorney, both of El Paso, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of murder and his punishment was assessed at death.

Appellant's main contention seems to be that the evidence is insufficient to sustain his conviction in this,—that the accomplice witness is not sufficiently corroborated to connect him with the commission of the offense; that he agreed to its commission and was doing something at the time in furtherance of the common design of all participants.

We have read the record with great care and reached the conclusion that appellant's contention is not well founded. The evidence shows that the deceased, Enrique Valles, at the time of the homicide, was employed by J. M. Cruze, who owned and operated a dairy; that the deceased lived in a small adobe house a short distance from Mr. Cruze's residence; that about 6:00 P. M. a black Sedan automobile driven by three men appeared at the dairy; that two of the men got out of the car and talked to Valles and that was the last time that Cruze saw the deceased.

Trinidad Rodriguez testified that he, Esteban Rodriguez and appellant went to the dairy where the deceased was and asked him if he knew where they could get a drink, to which he replied, "Yes, about a mile from here"; that they invited the deceased to go with them; that he accepted their invitation and they got some liquor. From there they went to the City of El Paso, got some Sotol, and then went to appellant's home, where all four of them drank it. Later, they all left to take the deceased to his home; that Trinidad Rodriguez and Esteban Rodriguez occupied the front seat with Trinidad doing the driving, while appellant and the deceased occupied the rear seat; that they drove out on the Carlsbad road to the Sand Hill, stopped their car and extinguished the lights; that appellant told deceased to get out, which he declined to do, whereupon appellant started to pull him out of the car. Appellant asked the deceased how many years he had been working at the dairy, and when deceased told him, "about thirteen years," appellant said, "I believe you must have some money then," to which deceased replied, "No, I earned very little and gave some of it to my children." Appellant insisted that the deceased had some money and told him to tell the truth. The deceased became frightened and said that he had about two thousand dollars at his home buried under the floor. Appellant then struck the deceased on the head with a car crank and knocked him to the ground. Appellant and Esteban then dug a hole in a sand hill while Trinidad kept watch for cars. They took a watch and key from the pockets of the deceased, placed his body in the hole and covered it with sand, after which they proceeded to the home of the deceased and searched it. Appellant came out of the house with a gunny sack and placed it in the car. They then went to the home of the appellant and divided the loot among them. Esteban received a black coat, a black sweater, a pair of shoes, a hat and yellow pair of pants. Appellant kept a red shirt, a pair of red trousers, a pair of red

corduroy trousers and a pistol. He gave Trinidad a watch and a flash light.

The property was later recovered by the officers and identified as that belonging to the deceased. The body of the deceased was found by the officers as a result of information given them by Trinidad.

Appellant took the witness stand and admitted going in his automobile with Esteban and Trinidad to the dairy at the time in question. He also admitted that they invited the deceased to ride with them to get some liquor. He further admitted that they went to the City of El Paso, where they purchased a bottle of Sotol, which they drank, and then started to take the deceased home; that he (appellant) was doing the driving and Trinidad occupied the front seat with him while Esteban and the deceased occupied the rear seat; that Trinidad instructed him to drive out the Carlsbad road; that Esteban struck the deceased with his fist, knocking him down in between the rear and front seats; that Trinidad jumped over the front seat, put a rag over the deceased's mouth and hit him with something; that when this happened he (appellant) asked them, "What is going on here?" to which Trinidad replied, "You drive the car; if not, you will find out what is going on." Being afraid not to comply with their demands, appellant drove on to Sand Hills, where Esteban and Trinidad dug a hole, placed the body of the deceased therein, and covered it up. From there they went to the home of the deceased which Trinidad entered by opening the door; that he (appellant) followed Trinidad into the house. Trinidad brought some clothing, a pistol and flash light out of the house and placed them in the car. They then drove home where Trinidad divided the property among them.

Appellant testified that he did not know that the deceased had any money because he appeared to be poor; that on two occasions he had taken Isabella Hernandez out to the deceased's home to get some money from him. Appellant denied that he had previously entered into any agreement with Esteban and Trinidad, or either of them, to rob the deceased or kill him.

The proof shows that appellant was thirty years old while his confederates were nineteen and twenty years of age respectively; that he had previously talked to Trinidad about robbing

the deceased. The testimony also shows that at the time of the commission of the offense Trinidad lived with appellant and had been living there for several months prior thereto; that Esteban was their friend and the three frequently associated together.

That the deceased was killed and robbed by appellant and his co-defendants is not only shown by the testimony of Trinidad but also by the loot taken from the home of the deceased and found in the possession of the three, each one being in possession of a part thereof. That late in the afternoon proceding the night of the alleged offense the three drove in appellant's car, a distance of nine miles, to the dairy is admitted by appellant. What was their purpose in going there to see the deceased? To merely get a drink of liquor in that vicinity seems unreasonable, because they could obtain all the liquor they wanted and more in the City of El Paso or Juarez, Mexico. This is a very strong circumstance from which the inference of an unlawful motive arises. In addition thereto, we have the further circumstance that Trinidad had worked for appellant, that Esteban was a close friend, and both were much younger, they being mere boys while appellant was a mature man, and from this the inference may justly be drawn that appellant exercised a dominating influence upon both of them rather than they had such influence over him. Again, according to the appellant's testimony, he was present when the offense was committed. If he did not agree to its commission or participate therein, then why did he not drive away while Trinidad and Esteban were digging the grave, if they did dig it? Why did he not report the matter to the officers? Of course, he said he was afraid that they would kill him, but why did he hide the loot under the mattress of his bed? These are circumstances which not only corroborate the testimony given by Trinidad to connect appellant with the commission of the offense but also tended to show a prior agreement between the parties to commit the offense charged.

In determining whether there is sufficient evidence to corroborate the testimony of an accomplice, it is not necessary that the corroborating evidence, whether direct or circumstantial, support that of the accomplice as to every incriminative fact. It is sufficient if it tends to connect appellant with the offense charged in some material respect. In this case, we think there is ample evidence which meets the requirements of

the rule stated. See Rowan v. State, 97 Tex. Cr. R. 130; Kelly v. State, 120 S. W. (2d) 1067; York v. State, 133 Tex. Cr. R. 41; Jones v. State, 133 Tex. Cr. R. 322.

By Bills of Exception Nos. 1 and 6 appellant complains of certain remarks by State's counsel in their argument to the jury. These bills are qualified by the trial court who states in his qualification that he had no recollection of the exact language used but if such language was used as set out in said bills, no objection was made thereto at the time; nor was the matter complained of in the appellant's motion for a new trial. The bills were accepted by the appellant with the qualifications thereto and he is bound thereby. Obviously these bills present nothing for this court to review. See Branch's Ann. Tex. P. C., p. 203, sec. 361.

Bills of Exception Nos. 2, 3, 4 and 5 complain of the insufficiency of the evidence to corroborate the testimony of the accomplice, Trinidad Rodriguez. We need not discuss these bills inasmuch as we have discussed the question in disposing of his contention that the evidence is wholly insufficient to justify and sustain his conviction. What we have there said on the subject disposes of these bills.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a motion for a rehearing in which he points out what we consider immaterial inaccuracies in the statement of the testimony found in the original opinion, most of which might as well have been omitted in the discussion of the questions of law raised in the case. Consequently there is no proper point in discussing them. Involved as are the facts, with the complicated Mexican names and the still more complicated language used, it is not always easy to avoid these things.

This strange and sordid murder, wanton and fruitless robbery, involving the conduct of three young Mexicans towards a Mexican old man, who was apparently their friend, is without mitigating circumstances. After the evidence has been analyzed, a very clear case is presented in which the jury was thoroughly justified in assessing the extreme penalty.

The real questions for our consideration in the appeal are found in the bills of exception. They have been properly and ably discussed in the original opinion so that the motion for rehearing makes no complaint in regard to them and presents nothing on which we should write further.

The motion for rehearing is overruled.