# RICHARD WILLIAM WARD, JR.

v.

# COMMONWEALTH OF VIRGINIA

March 2, 1979.

Record No. 780338.

Present: All the Justices.

*Michael Morchower (John W. Luxton; Ott, Morchower, Thompson &
McMullan,* on brief), for appellant.

*Alan Katz, Assistant Attorney General (Marshall Coleman, Attorney
General,* on brief), for appellee.

HARMAN, J., delivered the opinion of the Court.

A jury found Richard W. Ward, Jr. (Ward or defendant), guilty
of statutory burglary and fixed his punishment at confinement in
the penitentiary for four years. Ward appeals from the trial court's
order pronouncing sentence on that verdict.

The principal issue presented here is whether the court erred in
refusing to grant a cautionary instruction on the weight to be
afforded uncorroborated accomplice testimony.

On September 29, 1976, Bronson Howard Knight (Knight) and a
companion burglarized the residence of Jerry Allen Enfield (En-
field) in Chesterfield County and stole Enfield's collection of silver
coins. The stolen coins had an aggregate face value of approxi-
mately $8,000. Enfield valued the stolen coins at between $40,000
and $60,000. While some of the coins had been individually
mounted, most of Enfield's collection consisted of dimes, quarters

and half dollars which the witnesses classified as "bulk silver".*

The Commonwealth proceeded against defendant, a coin dealer, as an accessory before the fact. Its case was based on the testimony of Knight, who had already been tried, convicted and sentenced for his part in the burglary. Knight testified that he had known the defendant for four or five years from "going in and out of [Ward's] coin shop." He further testified that on one visit to the shop, Ward asked him "if [he] had been making any money lately". When Knight responded that he had not, Ward told Knight that "[he] ought to be making something" and showed Knight two books "where [Knight] could make some money." These books contained the names and addresses of coin dealers and collectors, including Enfield.

Knight testified that when asked what he knew about Enfield, Ward responded that Enfield had to be a "strong collector" for his name to be listed in the book. Knight further testified that Ward told him that Ward would pay "fifty percent" for any of Enfield's coins which Knight might obtain.

Knight admitted that he and Gerald Wayne Friedley burglarized the Enfield residence and stole the coins on September 29, 1976. Knight said he delivered the Enfield coins to Ward the night of September 30, "a day and a half" after the burglary, and was paid $9,000 in cash by Ward.

Asserting that Knight's testimony was not sufficiently corroborated, Ward contends that the trial court erred in refusing his cautionary instruction on the weight to be afforded the uncorroborated testimony of an accomplice.

Under the decided cases in Virginia, the jury, if satisfied of the guilt of the accused beyond a reasonable doubt, may convict the accused upon the uncorroborated testimony of an accomplice. *Blount* v. *Commonwealth*, 213 Va. 807, 810, 195 S.E.2d 693, 695 (1973). However, where such testimony is uncorroborated, it is the duty of the court to instruct the jury about the danger of convicting upon such uncorroborated testimony and a failure to so instruct is error. *Smith* v. *Commonwealth*, 218 Va. 455, 457, 237 S.E.2d 776, 777 (1977).

In *Dillard* v. *Commonwealth*, 216 Va. 820, 224 S.E.2d 137

---

* "Bulk silver" is composed of common silver coins (dimes, quarters, half dollars and dollars) minted prior to 1965 which are primarily valuable because of their silver content. Bulk silver is generally traded by dealers in units, called bags, composed of silver coins having a face value of $1,000. The value of a bag fluctuates with the silver market.

(1976), we were called upon to decide the quantity and quality of corroborative evidence necessary to justify the refusal of a cautionary instruction on accomplice testimony. There we rejected the "ultimate fact" standard urged by defendant and reaffirmed the "relation to guilt" standard followed in our earlier cases, saying:

> "Where, therefore, the testimony of an accomplice is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony, it is not error to refuse a cautionary instruction. This rule applies even though the corroborative evidence falls short of constituting 'independent evidence which supports the alleged ultimate fact' that the accused committed the offense charged."

216 Va. at 823-24, 224 S.E.2d at 140.

The Commonwealth points to the following evidence which it says corroborates Knight's testimony: defendant and Knight both testified that they had been acquainted for at least two years; defendant was aware of Knight's "bad" reputation; defendant testified that he had sold several books to Knight; defendant told the police on October 1, the same day he had agreed to sell four to five bags of silver coins to another dealer, that he did not deal in large quantities of bulk silver, that he had received no recent large shipments of bulk silver and that he expected none within the next two weeks; that one week later defendant delivered and received payment for five and a half bags of bulk silver sold to another dealer at a time when the silver market was depressed; that Ward told the other dealer on October 1 that he did not then have the silver but expected it soon; that on October 8 the other dealer observed two coins on display in defendant's shop similar to coins stolen from Enfield; and that after his arrest defendant, while denying that he had participated in the Enfield burglary, told the police that "he knew who did it" and offered to assist the police in apprehending the burglars.

The Commonwealth also relies on the evidence of Enfield who, on the basis of his recollection, together with statistical data on mintage, probability and experience gained from prior purchases

of bulk silver, testified that the coins purchased from Ward were a part of his stolen collection. It should be noted, however, that the other witnesses who were knowledgeable about coins testified it was impossible to identify and distinguish one lot of bulk silver from another.

Defendant points out that his testimony, and that of his witnesses, shows that he regularly purchased and sold bulk silver in the ordinary course of his business; that he had made a number of other sales of bulk silver to the same dealer with whom he contracted on October 1; that several witnesses testified to making or observing others make sales of bulk silver to defendant in the summer and fall of 1977; and one witness testified that he helped Ward count, bag and store a large quantity of bulk silver on Labor Day in 1976.

In addition defendant testified that Knight, sometime prior to his arrest on October 27, came into defendant's shop and offered to sell him some coins. When defendant declined to purchase these coins, Knight became very agitated and profane and hurriedly left the shop. A witness who was in Ward's store during Knight's visit testified that Ward and Knight conferred privately in Ward's office for a short time and that "all of a sudden the door flies open and Mr. Knight huffs out and screams an obscenity at Mr. Ward and almost breaks the door down going out."

Ward denied that he suggested the burglary to Knight. Ward also denied that he purchased or agreed to purchase the loot from the burglary. He testified that the bulk silver, which he agreed to sell on October 1 and delivered on October 8, was an accumulation of smaller quantities of bulk silver purchased from customers in the ordinary course of his business over a period of several months. He said his statement to the police was truthful since he had received no large shipments of silver in the past and expected none in the near future. He says he simply failed to disclose that he had accumulated a considerable quantity of bulk silver in small purchases over a period of months. Defendant also denied that he told the .dealer with whom he contracted on October 1 that he did not then have the silver. He testified that the reason delivery was delayed was to permit defendant to examine the silver prior to delivery.

It would appear, therefore, that most of the evidence relied upon by the Commonwealth to support and corroborate Knight's testimony related to what occurred after the burglary. While this evidence may have corroborated Knight's testimony indicating

that defendant received stolen goods, it must be remembered that defendant was tried upon the theory that he was an accessory *before* the fact. Knight's testimony in support of this theory was corroborated in only two respects, *viz.*, that Knight and defendant were acquainted and that Knight had been a customer at defendant's shop. Certainly, this limited substantiation falls far short of corroborating material facts tending to connect defendant with the instigation of the burglary. We hold, therefore, that the cautionary instruction should have been given.

■ While defendant also argues that the Commonwealth's evidence was not sufficient to convict Ward, we find this argument to be without merit. Knight's testimony alone, if believed by the jury, was sufficient to establish that defendant was an accessory before the fact to burglary.

For error in failing to grant the cautionary instruction, the judgment will be remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*