STATE OF WEST VIRGINIA

*v.*

ROLAND VANCE

(No. 14119)

Decided January 22, 1980.

*Edward I. Eiland* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Thomas N. Trent*, Assistant Attorney General, for defendant-in-error.

MILLER, JUSTICE:

Roland Vance appeals his conviction for breaking and entering and the subsequent life sentence imposed under the Habitual Criminal Act, W. Va. Code, 61-11-18. His three primary grounds of error are that: (1) the conviction was based on the testimony of accomplices and he was denied the conventional cautionary instruction as to their testimony; (2) his identity was improperly proved at the recidivist trial; and (3) under the circumstances of this case, the life sentence constitutes cruel and unusual punishment.

Defendant's conviction of breaking and entering rested primarily on the testimony of James and Donald Marcum, who were jointly indicted with Vance for that crime. The Marcums had pleaded guilty to the charge. They and their wives testified that they were all togeth-

er with Vance on the night in question at the home of James Marcum. Both the Marcums and Rose Marie Marcum, Donald Marcum's wife, testified that Vance proposed the breaking and entering of the Baisden Brothers store at that time.

James and Donald Marcum testified that in the early morning hours of February 20, 1975, they and Vance committed a breaking and entering at the store, located in Logan, Logan County. Their testimony was that while Donald Marcum waited in the car, James Marcum and Vance broke into the store by prying the locks off a door and stole sixteen guns and a number of shells.

The Marcums also testified that after the breaking and entering had been accomplished, they placed the guns in the back seat of the car and drove to the Lucky Star Club, where Vance said he would try to sell the guns. They stated that Vance went into the club while they remained in the car with the guns. When Vance returned to the car, he indicated that he was not able to dispose of the guns, and they then drove to the home of Enos and Abner Vance, who were Vance's half-brothers. Before arriving at the house, they stopped at a building and hid the guns in it.

It was also the Marcums' testimony that they, along with Vance, slept in the home of Enos and Abner Vance, and later in the morning brought the guns to the house and left them on the porch. Afterwards, they collected the guns, placed them in the car, and left with Vance. Donald Marcum stated that three of the guns were left on the porch and that Vance let him and James Marcum out of the car at an intersection on the road leading to the Lucky Star.

Enos and Abner Vance testified that Roland Vance and the Marcums came to their home about 5:30 a.m. on February 20, 1975, and slept until late in the morning. The Marcums then left briefly, returned with a number of guns, some of which had price tags on them, and deposited the guns on the porch. In the afternoon, Vance and the Marcums left, taking all of the guns ex-

cept three. Neal Scaggs, President of Baisden Brothers, identified these three guns as among those missing from the store.

Trooper R. G. Wilfong testified that following the arrest of the Marcums, he and two other troopers took them to the home of Enos and Abner Vance, where the troopers found the three guns. Trooper Wilfong stated that no other guns were thereafter found. Wallace Baisden[1] testified that about three days after the breaking and entering, Roland Vance offered to sell him two guns. Having heard of the breaking and entering, Baisden contacted the State Police, and Vance was arrested. Vance based his defense on alibi, asserting that on the night of the breaking and entering, he was with a Jinks Adkins and was not in the vicinity of the store.

At the close of the evidentiary phase of the trial, defense counsel requested that the court give the jury three cautionary instructions with respect to the testimony of the Marcums. The court, holding as a matter of law that their testimony had been corroborated, refused.

I

While a number of jurisdictions hold that a criminal conviction cannot rest solely on the uncorroborated testimony of an accomplice,[2] this Court, along with a num-

---

[1] Wallace Baisden apparently had no connection with the Baisden Brothers store.

[2] Most states have this rule by virtue of statute. *See, e.g., Armstrong v. State,* 294 Ala. 100, 312 So.2d 620 (1975); *Dimmick v. State,* 473 P.2d 616 (Alaska 1970); *State v. Bouillon,* 112 Ariz. 238, 540 P. 2d 1219 (1975); *People v. Tewksbury,* 15 Cal.3d 953, 967, 127 Cal. Rptr. 135, 146, 544 P.2d 1335, (1976), *cert. denied,* 429 U.S. 805, 50 L. Ed. 2d 65, 97 S.Ct. 38; *Coleman v. State,* 227 Ga. 769, 183 S.E.2d 379 (1971); *State v. Johnson,* 237 N.W.2d 819 (Iowa 1976); *People v. Daniels,* 37 N.Y.2d 624, 376 N.Y.S.2d 436, 339 N.E.2d 139 (1975); *Colller v. State,* 520 P.2d 681 (Okla. Crim. 1974); *State v. Wood,* 252 Or. 58, 448 P.2d 509 (1968); *see generally* 7 J. Wigmore, *Evidence* § 2056 (Chadbourn rev. 1978), as to the evolution of the rule from one of procedure in English common law to one of substantive law.

At least three jurisdictions have the substantive corroboration rule by virtue of nonlegislative action: Maryland and Tennessee as a result of judicial decision, *Swann v. State,* 192 Md. 9, 63 A.2d 324

ber of others, has taken the opposite view that a criminal conviction can be obtained on the uncorroborated testimony of an accomplice. *E.g., State v. Messinger,* ___ W.Va. ___, 256 S.E.2d 587 (1979); *State v. Adkins,* ___ W.Va. ___, 253 S.E.2d 146 (1979); *State v. Bolling,* ___ W.Va. ___, 246 S.E.2d 631 (1978); *State v. Spadafore,* ___ W.Va. ___, 220 S.E.2d 655 (1975); *State v. Humphreys,* 128 W.Va. 370, 36 S.E.2d 469 (1945).[3] We have recognized, however, as a corollary to this rule, that where the accomplice's testimony is uncorroborated, a criminal defendant is entitled to a jury instruction that such testimony should be received with great caution. *E.g., State v. Spadafore, supra; State v. Humphreys, supra.*

The reasoning behind both of these approaches is that in implicating the defendant, the accomplice may well have an ulterior motive—revenge or the promise or hope of leniency in his case, whether by way of lighter sentence, probation, early parole or outright release. In *Phelps v. United States,* 252 F.2d 49, 52 (5th Cir. 1958), the problem with accomplice testimony was summarized in the following terms:

"[A] long history of human frailty and governmental overreaching for conviction justifies dis-

(1949); *Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811 (1959); and Kentucky by virtue of a judicially promulgated rule, *see Taylor v. Commonwealth,* 461 S.W.2d 920 (Ky. 1970), *cert. denied sub nom. Brown v. Kentucky,* 404 U.S. 837, 30 L. Ed. 2d 70, 92 S.Ct. 126 (1971).

[3] *E.g., Pieramico v. People,* 173 Colo. 276, 478 P.2d 304 (1970); *Anderson v. State,* 241 So.2d 390 (Fla. 1970), *modified on other grounds,* 408 U.S. 938, 33 L. Ed. 2d 758, 92 S.Ct. 2868 (1972); *People v. Mentola,* 47 Ill. 2d 579, 268 N.E.2d 8 (1971); *Coleman v. State,* 264 Ind. 64, 339 N.E.2d 51 (1975); *State v. Sawyer,* 314 A.2d 830 (Me. 1974); *Commonwealth v. DeBrosky,* 363 Mass. 718, 297 N.E.2d 496 (1973); *People v. Barron,* 381 Mich. 421, 163 N.W.2d 219 (1968); *State v. Rumney,* 109 N.H. 544, 258 A.2d 349 (1969), *cert. denied,* 397 U.S. 1051, 25 L. Ed. 2d 666, 90 S.Ct. 1389 (1970); *State v. Burgess,* 97 N.J. Super. 428, 235 A.2d 231 (1967); *State v. Flonnory,* 31 Ohio. St. 2d 124, 285 N.E.2d 726 (1972); *State v. Givens,* 267 S.C. 47, 225 S.E.2d 867 (1976); *Dillard v. Commonwealth,* 216 Va. 820, 224 S.E.2d 137 (1976); *State v. Johnson,* 77 Wash. 2d 423, 462 P.2d 933 (1969); *Kutchera v. State,* 69 Wis. 2d 534, 230 N.W.2d 750 (1975).

The federal position is the same as this latter view. *See,* Annot., 17 A.L.R. Fed. 249 (1973).

trust in accomplice testimony. Cobham's misplaced hope for immunity that helped send Raleigh to the Tower is on the same level with the hope of some narcotic peddler or some other poor wretch to save *his* skin by laying the entire blame on a friend or close associate...."

*See generally* 7 J. Wigmore, *Evidence* § 2057 (Chadbourn rev. 1978), at 417.

The issue in this case is the degree of corroboration necessary to warrant the refusal of a defendant's cautionary instruction relative to the accomplice testimony. This is a question that has received little analysis in our cases. In *State v. Adkins,* ____ W.Va. ____, 253 S.E.2d 146, 149 (1979), we quoted a rather broad rule from a Virginia case:

" 'The corroborative evidence, standing alone, need not be sufficient either to support a conviction or to establish all the essential elements of an offense. If those were the requirements, and the Commonwealth had at hand independent evidence sufficient to satisfy them, then the need to use accomplice testimony would not arise.' *Allard v. Commonwealth,* Va., 243 S.E.2d 216, at 217 (1978), quoting *Dillard v. Commonwealth,* 216 Va. 820 at 823, 224 S.E.2d 137 at 140 (1976)." [____ W.Va. at ____, 253 S.E.2d at 149]

In *State v. Messinger, supra,* a per curiam opinion with no factual elaboration on this point, this Court stated that a cautionary instruction should have been given, as "portions of the testimony of accomplice Williamson were uncorroborated." [____ W.Va. at ____, 256 S.E.2d at 590]. Neither *State v. Spadafore, supra,* nor *State v. Bolling, supra,* cited by *Messinger,* contained any discussion as to the degree of corroboration required. The same is true of *State v. Humphreys, supra.*

Prior to *State v. Humphreys,* we find no West Virginia case that attempts to formulate a test to determine when there is sufficient corroboration to obviate giving

a cautionary instruction.[4] The reason for this may be that it was not until *Humphreys* that this Court made it clear that a proffered cautionary instruction had to be given where the accomplice testimony was uncorroborated.

In *State v. Adkins, supra,* we followed our custom of examining Virginia law where our own law is not developed in a given area, and relied on *Dillard v. Commonwealth,* 216 Va. 820, 224 S.E.2d 137 (1976), and *Allard v. Commonwealth,* 218 Va. 988, 243 S.E.2d 216 (1978). Both of these cases recite the rule quoted by *Adkins,* but also make a further refinement of the accomplice corroboration rule by requiring that the corroborative evidence relate to material facts linking the accused with the crime:

> "Where, therefore, the testimony of an accomplice is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony, it is not error to refuse a cautionary instruction. This rule applies even though the corroborative evidence falls short of constituting 'independent evidence which supports the alleged ultimate fact' that the accused committed the offense charged." [216 Va. at 823-24, 224 S.E.2d at 140]

*See Ward v. Commonwealth,* ___ Va. ___, 252 S.E.2d 349 (1979). We believe the Virginia rule is in line with other authorities[5] and adopt it as our law.

---

[4] In *State v. Hayes,* 109 W.Va. 296, 153 S.E. 496 (1930), we addressed the related issue of the admissibility of evidence which could be offered to corroborate the testimony of an accomplice:

"It is generally held that evidence corroborating an accomplice's testimony must relate to some fact or circumstance material to the issue of the guilt or innocence of the accused; but, if the evidence tends to prove a material fact in issue, it is admissible in corroboration of the accomplice, although such fact does not of itself tend to connect defendant with the offense for which he is on trial. . . ." [109 W.Va. at 306, 153 S.E. at 500]

[5] *See, e.g., People v. Mentola,* 47 Ill. 2d 579, 268 N.E.2d 8 (1971); *People v. Hermens,* 5 Ill. 2d 277, 125 N.E.2d 500 (1955); *Gray v.*

This requirement of materiality is reasonable, since if a conviction can rest solely on the uncorroborated testimony of an accomplice, the cautionary instruction is the only protection afforded the defendant on this issue. Consequently, in order to avoid giving the cautionary instruction, there should be corroboration of the accomplice's testimony on material facts which tend to connect the accused with the crime. On the other hand, where this type of corroboration exists, it provides a firm basis for establishing the credibility of the accomplice testimony, and thereby eliminates the necessity of the cautionary instruction. In a doubtful case, the cautionary instruction should be given to avoid the possibility of error.

In the present case, the corroborative evidence consisted essentially of (1) the testimony of Enos and Abner Vance that the Marcums and Vance came to their home with a number of guns, some of which had price tags, and that they left three guns behind which were subsequently identified by the store owner as being among guns missing from the store; and (2) the testimony of Rose Marie Marcum, wife of Donald Marcum,[6] that in a conversation between the defendant and the Marcums on the night in question, the defendant suggested that they break into the Baisden Brothers store.

All of this evidence corroborated the accomplices' testimony. The testimony of Enos and Abner Vance sup-

---

*State*, 224 Md. 308, 317, 167 A.2d 865, 869 (1961); *Contreras v. State*, 144 Tex. Crim. 285, 289, 162 S.W.2d 716, 718 (1942).

[6] It appears to be the general rule that while one accomplice ordinarily may not corroborate another, *see, e.g., Arnold v. United States*, 94 F.2d 499 (10th Cir. 1938); *People v. Tewksbury*, 15 Cal.3d 953, 958, 127 Cal. Rptr. 135, 139, 544 P.2d 1335, ___ (1976), cert. denied, 429 U.S. 805, 50 L. Ed. 2d 65, 97 S.Ct. 38; *State v. Rose*, 75 Idaho 59, 267 P.2d 109 (1954); *Commonwealth v. Pressel*, 194 Pa. Super. 367, 168 A.2d 779 (1961); *Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811 (1959); *Jones v. Commonwealth*, 111 Va. 862, 69 S.E. 953 (1911), an accomplice's wife usually may do so if she herself is not an accomplice, *see e.g., Nix v. Commonwealth*, 299 S.W.2d 609 (Ky. 1957); *State v. Caporale*, 16 N.J. 373, 108 A.2d 841 (1954); *Cantrell v. State*, 129 Tex. Crim. 240, 86 S.W.2d 777 (1935); *see generally* 7 Wigmore, *Evidence* § 2059(a) (Chadbourn rev. 1978).

ported the Marcums' evidence that Roland Vance was with them shortly after the breaking and entering and had possession of the guns, some of which still had price tags on them. These were material facts implicating the defendant's participation in the crime. The testimony of both of the Marcums' wives gave corroboration to the Marcums' testimony that they were with Vance on the night of the crime. Moreover, Rose Marie Marcum's testimony corroborated the Marcums' statement that Vance suggested that they join with him in breaking into the Baisden Brothers store that night. Again, this was a material fact connecting the accused to the crime.

The accomplices' testimony was corroborated as to material facts which tended to connect the defendant with the crime. This evidence was substantially greater than that existing in *Humphreys*. There, the corroboration was held insufficient because it demonstrated only that the defendant was seen with the accomplice the day of the commission of the crime, both before and after its commission. Under the evidence in this case, the trial court did not err in refusing to give the jury a cautionary instruction on accomplice testimony.

## II

The defendant attacks his life sentence under our habitual criminal statute[7] on the basis that the State failed to establish his identity beyond a reasonable doubt as the person who committed the two prior felonies of breaking and entering.

Regardless of how a recidivist proceeding may be labeled, and irrespective of the particular mode by which it is invoked, it is uncontestable that such a proceeding presents a "distinct issue," *Graham v. West Virginia*, 224

---

[7] W. Va. Code, 61-11-18, in material part, provides:

"When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

U.S. 616, 625, 56 L. Ed. 917, 921, 32 S.Ct. 583, ____ (1912): whether the individual alleged to be the same person who committed certain prior crimes is, indeed, that person. *Oyler v. Boles*, 368 U.S. 448, 7 L. Ed. 2d 446, 82 S.Ct. 501 (1962).

A recidivist proceeding is not simply a sentencing hearing, but a proceeding whereby a new criminal status, that of being an habitual criminal, is determined. *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 983, 39 L. Ed. 2d 881, 94 S.Ct. 1577 (1974); *State v. Kamae*, 56 Hawaii 628, 548 P.2d 632 (1976); *State v. Cooper*, 161 Mont. 85, 504 P.2d 978 (1972). If an individual is successfully prosecuted as an habitual criminal, a greater penalty than that attaching to the underlying crime is imposed. For these reasons, courts have required substantial due process protection in recidivist proceedings. *E.g., Oyler v. Boles, supra; United States ex rel. Swiatek v. Mancusi*, 446 F.2d 943 (2d Cir. 1971); *Benavidez v. Baker*, 399 F.2d 591 (10th Cir. 1968); *Jones v. Boles*, 257 F. Supp. 293 (N.D. W.Va. 1966); *Meadows v. Boles*, 255 F. Supp. 173 (N. D. W.Va. 1966); *see Mottram v. Murch*, 458 F.2d 626 (1st Cir. 1972), *rev'd on other grounds*, 409 U.S. 41, 34 L. Ed. 2d 194, 93 S.Ct. 71; *cf. Specht v. Patterson*, 386 U.S. 605, 18 L. Ed. 2d 326, 87 S.Ct. 1209 (1967) (enhanced sentence under state sex offenders act).

Most courts, including our own, have held that where the issue of identity is contested in an habitual criminal proceeding, the state must prove identity beyond a reasonable doubt. *E.g., State v. McMannis*, ____ W.Va. ____, 242 S.E.2d 571 (1978); *State v. Lawson*, 125 W.Va. 1, 22 S.E.2d 643 (1942); *State v. Kamae, supra; People v. Casey*, 399 Ill. 374, 77 N.E.2d 812 (1948); *Howard v. State*, 83 Nev. 53, 422 P.2d 548 (1967); *State v. Wyckoff*, 27 N.J. Super. 322, 99 A.2d 365 (1953); *People v. Reese*, 258 N.Y. 89, 179 N.E. 305 (1932); *Commonwealth v. Falgiatore*, 165 Pa. Super. 235, 67 A.2d 674 (1949); *State v. Harris*, 1 Utah 2d 182, 264 P.2d 284 (1953); *State v. Aplin*, 134

Wash. 166, 235 P. 9 (1925); Annot., 11 A.L.R.2d 870, 879 (1950).[8]

The defendant argues that if the burden of proof of his identity is beyond a reasonable doubt, then it must follow that he is entitled to the same protection against improper identification procedures as is applicable in a criminal case. There can be little doubt that the defendant's identity in an habitual criminal proceeding is the key factual issue. In light of this fact and the legal requirement of proof beyond a reasonable doubt, we conclude that a defendant in an habitual criminal proceeding is entitled to the same right not to be subjected to unduly suggestive identification procedures as in a criminal trial.

Defendant's chief ground of error is that the trial court permitted the State to introduce the identification testimony of two police officers who had allegedly assisted in arresting the defendant for his 1963 and 1969 felonies. Each of these officers was shown one or more photographs of the defendant prior to his testimony. Before the officers testified, the defendant's attorney moved for an *in camera* hearing on the theory that the photographs were unduly suggestive and formed the only basis for the officers' in-court identification.

In *State v. Pratt*, ____ W.Va. ____, 244 S.E.2d 227 (1978), we addressed the right to an *in camera* hearing where a challenge to in-courtroom identification is made at a criminal trial, and stated:

"The prevailing view from other jurisdictions, and we think the best one, is that the lower

---

[8] The particular method of proof of identity varies, but it consists typically of some combination of authenticated records, photographs, fingerprints, and oral testimony. Annot., 11 A.L.R.2d 870 (1950). This Court has held that the mere proof of identity of names between the defendant and the person named in the prior conviction records fails to establish identity in a recidivist proceeding. *State v. McKown*, 116 W.Va. 253, 180 S.E. 93 (1935). In *State v. Lawson*, 125 W.Va. 1, 22 S.E.2d 643 (1942), we approved as an identification method the comparison of fingerprints between the defendant and the person convicted of the prior offense.

court must conduct an *in camera* hearing on the admissibility of the evidence when an in-court identification is challenged on the ground that it is tainted by a pre-trial identification made under constitutionally impermissible conditions. *People v. Rodriguez*, 68 Cal.App.3d 874, 137 Cal.Rptr. 594 (1977); *People v. Moreno*, 181 Colo. 106, 507 P.2d 857 (1973); *Cane v. Commonwealth*, Ky., 556 S.W.2d 902 (1977); *State v. Coulombe*, Me., 373 A.2d 255 (1977); *Green v. State*, 281 Md. 483, 380 A.2d 43 (1977); *State v. Wilbely*, 112 N.J. Super. 216, 270 A.2d 734 (1970); *People v. Balsano*, 51 A.D.2d 130, 380 N.Y.S.2d 129 (1976); *State v. Tuttle*, 33 N.C.App. 465, 235 S.E.2d 412 (1977); *Johnson v. Oklahoma*, Okl.Cr., 569 P.2d 480 (1977); *State v. DeMasi*, R.I., 374 A.2d 806 (1977)." [___ W.Va. at ___, 244 S.E.2d at 234-35]

Much the same viewpoint was stated in *Gilbert v. California*, 388 U.S. 263, 272, 18 L. Ed. 2d 1178, 1186, 87 S.Ct. 1951, 1956 (1967):

"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. United States v Wade, 388 US 218, 18 L ed 2d 1149, 87 S Ct 1926. . . ."

This position is also supported by a majority of the federal appellate courts, as demonstrated by *United States ex rel. Fisher v. Driber*, 546 F.2d 18, 21 (3d Cir. 1976), and the cases it cites, which include *United States v. Cranson*, 453 F.2d 123, 125-26 (4th Cir. 1971), *cert. denied*, 406 U.S. 909, 92 S.Ct. 1607, 31 L. Ed. 2d 821 (1972).

The reason for an *in camera* hearing where there is a claim of unduly suggestive pre-trial identification procedures is that the court can determine if there are sufficient facts to warrant the conclusion that there is an independent source of reliability for the identification— the substantive test set out in *Manson v. Brathwaite*, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S.Ct. 2243 (1977), and adopted in our criminal identification cases. *State v.*

*Willliams,* ___ W.Va. ___, 249 S.E.2d 752 (1978); *State v. Kennedy,* ___ W.Va. ___, 249 S.E.2d 188 (1978); *State v. Casdorph,* ___ W.Va. ___, 230 S.E.2d 476 (1976); *State v. Slie,* ___ W.Va. ___, 213 S.E.2d 109 (1975).

The failure to hold an *in camera* hearing may not be fatal, however, in all cases where a claim of unduly suggestive indentification procedures is made. In Note 7 of *State v. Pratt, supra,* we cited *People v. Miller,* 31 Ill. App. 3d 115, 333 N.E.2d 264 (1975), and stated:

> "[There] the court held that the failure to hold the hearing may be harmless error when there is sufficient evidence in the record to show an independent basis for the in-court identification. *See also, State v. Purk,* 84 N.M. 668, 506 P.2d 1215 (1973) and *U. S. v. Poe,* 462 F.2d 195 (5th Cir. 1972), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1972)." [___ W.Va. at ___, 244 S.E.2d at 235]

In the present case, the in-courtroom identification of the defendant by two police officers appears not to have an independent basis of reliability. Both officers acknowledged that they were shown the defendant's photograph shortly before their trial testimony. No attempt was made to have them recall the defendant's physical appearance or the length of time they had been associated with him. Both had assisted in the arrest of the defendant for the prior felonies which were the basis for the recidivist proceeding. One testified without elaboration that he assisted in the 1963 arrest and had not seen the defendant since that time, and the other related much the same brief story as to the 1969 arrest.

Obviously, if the identification of the defendant as the person who committed the two prior felonies in 1963 and 1969 rested solely on the testimony of these two officers, the identification would not be sufficient because of the unduly suggestive pre-trial photograph procedure and the lack of any facts to show that they had a reliable independent basis for identification. However, another police officer, Wiley, identified the defendant as the same

person who was convicted of the 1963 crime. He testified that he arrested the defendant for the 1963 crime and had known the defendant some five years prior to that time. He also stated that he was present and gave testimony at the 1963 trial, and that he had seen the defendant on one or two occasions since the 1963 conviction.

In addition to this identification testimony, the State presented the testimony of an assistant records clerk from Huttonsville Correctional Center, who brought the records of the 1963 and 1969 convictions which contained photographs taken on each admission to Huttonsville. Moreover, defense counsel who had represented the defendant on the 1963 and 1969 charges were subpoenaed and identified the defendant.

Because there were a number of other identification witnesses introduced at the recidivist proceeding who properly connected the defendant with the prior convictions, we decline to reverse his recidivist conviction. We are of the opinion that while there was an unconstitutionally suggestive pre-trial identification procedure as to the two police officers, the doctrine of harmless constitutional error can be applied. In *Brown v. United States*, 411 U.S. 223, 36 L. Ed. 2d 208, 93 S.Ct. 1565 (1973), the Court unanimously applied the doctrine to improperly admitted confessions which were "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." [411 U.S. at 231, 36 L. Ed. 2d at 215, 93 S.Ct. at 1570]. The Court recognized, as have we, that before a constitutional error can be deemed harmless, it must be shown to be harmless beyond a reasonable doubt. *E.g., Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L. Ed. 2d 1 (1972); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L. Ed. 2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed. 2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed. 2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L. Ed. 2d 171 (1963); *State v. Boyd*, ___ W.Va. ___, 233 S.E.2d 710 (1977); *State ex rel. Grob v. Blair*, ___ W.Va. ___, 214 S.E.2d 330 (1975).

A close examination of the entire record leads us to conclude that the two police officers' identification testimony was harmless beyond a reasonable doubt, in light of the independent identification testimony of the other witnesses which was substantial and uncontradicted.

## III

Defendant further assails his recidivist conviction on the ground that it constitutes cruel and unusual punishment under the doctrine of *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 983, 39 L. Ed. 2d 881, 94 S.Ct. 1577 (1974).

In *Martin v. Leverette*, ____ W.Va. ____, 244 S.E.2d 39, 42 (1978), we reviewed in some detail the various constitutional objections raised against habitual criminal acts, and cited the following statement from *Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 651, 17 L. Ed. 2d 606, 611 (1967):

> " 'Such statutes, though not in the precise procedural circumstances here involved, have been sustained in this Court on several occasions against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities.' "

While *Martin* dealt with the five-year enhancement section of our habitual criminal act, there can be little question that its Third Syllabus was designed to cover both the five-year and the life enhancement sections of our habitual criminal act:

> "Selective enforcement by a prosecutor of the habitual criminal statute, W.Va. Code, 61-11-18, and the enhanced sentence provided thereunder, are not *per se* violative of the Equal Protection or Cruel and Unusual Punishment Clauses of the West Virginia or the United States Constitutions."

*Martin* also recognized that the doctrine of *Hart v. Coiner*, *supra*, could provide a limited exception to the

application of our habitual criminal act. This exception is based on the premise that, in a particular case, the imposition of a life sentence may be so disproportionate to the gravity of the three underlying offenses that the cruel and unusual punishment standard of both our State and Federal Constitutions would be violated. We also set out in *Martin* the functional criteria devised in *Hart v. Coiner* to determine how, in a given case, the doctrine should be applied:

> "(1) [T]he nature of the offense; (2) the legislative purpose behind the punishment; (3) a comparison of the punishment with what would be inflicted in other jurisdictions; and (4) a comparison of punishment with other related offenses within the same jurisdiction. 483 F.2d at 140-142." [___ W.Va. at ___, 244 S.E.2d at 43]

A number of courts have recognized the general doctrine announced in *Hart v. Coiner*, that a criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution.[9]

We have given recognition to the proportionality principle in *State v. Woodward*, 68 W.Va. 66, 69 S.E. 385 (1910). In *State ex rel. Pingley v. Coiner*, 155 W.Va. 591, 186 S.E.2d 220 (1972), we acknowledged that the term "cruel and unusual punishment" is flexible and tends to broaden as society becomes more civilized and humane. A similar thought was expressed in *State ex rel. K. W. v. Werner*, ___ W.Va. ___, 242 S.E.2d 907, 910 (1978). In fact, Article III, Section 5 of the West Virginia Constitu-

---

[9] *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978), *cert. granted*, ___ U.S. ___, 60 L. Ed. 2d 1064, 99 S.Ct. 2403 (1979); *Carmona v. Ward*, 576 F.2d 405 (2d Cir. 1978), *cert. denied*, ___ U.S. ___, 59 L. Ed. 2d 58, 99 S.Ct. 874 (1979); *Downey v. Perini*, 518 F.2d 1288 (6th Cir. 1975), *vacated and remanded for consideration of mootness*, 423 U.S. 993, 46 L. Ed. 2d 367, 96 S.Ct. 419; *In re Lynch*, 8 Cal. 3d 410, 105 Cal. Rptr. 217, 503 P.2d 921 (1972); *People v. Lorentzen*, 387 Mich. 167, 194 N.W.2d 827 (1972); *see* Note, *Eighth Amendment Proportionality*, 7 Am. J. Crim. L. 253 (1979).

tion, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence."[10]

Despite recognition of the proportionality principle as being implicit in the cruel and unusual punishment clause of the Eighth Amendment, courts have been reluctant to apply it in practice. Even the court which formulated *Hart v. Coiner* refused to utilize it where the defendant's three convictions were a grand larceny, a breaking and entering, and a burglary. *Griffin v. Warden*, 517 F.2d 756 (4th Cir. 1975), *cert. denied*, 423 U.S. 990, 46 L. Ed. 2d 308, 96 S.Ct. 402. While each of the offenses in *Griffin* involved a crime against property, as do the three offenses here, the *Griffin* court emphasized the "potentiality of violence and danger to life as well as property." [517 F.2d at 757]. This same principle was stated in *Martin:* "Both crimes [burglary and armed robbery] are serious and involve the threat of violence against persons, if not actual violence in the case of armed robbery." [____ W.Va. at ____, 244 S.E.2d at 43-44].

In *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978), *cert. granted*, ____ U.S. ____, 59 L. Ed. 2d 58, 99 S.Ct. 874 (1979), the Fifth Circuit refused, on facts similar to those in *Hart,* to apply the doctrine where the defendant's life sentence rested on convictions of obtaining $120.75 under false pretenses; of fraudulent use of a credit card to obtain $80.00; and of passing a $28.36 forged check.[11]

---

[10] The complete text of Article III, Section 5 of the West Virginia Constitution reads:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the State for any offence committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence."

[11] In *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert denied*, 415 U.S. 983, 39 L. Ed. 2d 881, 94 S.Ct. 1577 (1974), the defendant's

We decline to apply the proportionality doctrine in the present case, since we believe the crime of breaking and entering carries the potentiality of violence and danger to life as well as to property.

Defendant's other assigned errors do not merit an extended discussion. He claims that on cross-examination during the third felony trial, the prosecutor asked questions about a prior conviction, in violation of *State v. McAboy*, ___ W.Va. ___, 236 S.E.2d 431 (1977). The record discloses, however, that the admission as to a prior conviction was elicited by defendant's counsel on direct examination and then reiterated by the prosecutor on cross-examination. We do not apply *McAboy* to the situation where the evidence of a prior conviction is first brought out by the defendant.

The defendant also asserts that one of his instructions on the State's obligation to prove its case beyond a reasonable doubt was altered by the court by its deleting a portion that related to defining proof beyond a reasonable doubt as proof "ris[ing] above the highest degree of probability." Another instruction on the same subject, which defined proof beyond a reasonable doubt in terms of "an abiding conviction amounting to a moral certainty," was refused. The defendant did obtain, however, two instructions which adequately covered this issue.[12]

---

convictions were for writing a $50.00 check on insufficient funds, interstate transportation of forged checks amounting to $140.00, and perjury committed in his son's murder trial.

[12] Defendant's Instruction No. 3:

"In all your deliberations you must bear in mind that the defendant is presumed to be innocent of any offense charged against him in the indictment in this case, and this presumption goes with him through every stage of the trial, and the burden is on the state to overcome this presumption of innocence and prove and establish his guilt beyond a reasonable doubt."

Defendant's Instruction No. 4:

"Before you can convict the defendant, you must believe beyond all reasonable doubt that every fact necessary to show his guilt has been established by full proof, and if you have a reasonable doubt upon any fact necessary to show the guilt of the defendant, then you should give him the benefit of that doubt and find him not guilty."

In *State v. Starr*, ___ W.Va. ___, 216 S.E.2d 242 (1975), after citing early cases to the same effect, we cautioned against tampering with or attempting to embellish the traditional language which requires the State to prove its case beyond a reasonable doubt. The reason for discouraging this kind of endeavor is that the traditional formulation is plain and self-explanatory, and that any attempt to elaborate may jeopardize the standard and cause reversible error. Other courts adhere to this admonitory position. *See, e.g., State v. Carr*, 108 Ariz. 203, 495 P.2d 134 (1972); *People v. Whittaker*, 45 Ill. 2d 491, 259 N.E.2d 787 (1970); *Templer v. State*, 494 P.2d 667 (Okla. Crim. 1972); *Blakely v. State*, 542 P.2d 857 (Wyo. 1975).

In view of the foregoing and the fact that the defendant received two proper instructions on the issue of reasonable doubt, there was no error resulting from the trial court's refusal to give the instructions.

For the reasons herein set out, we affirm the judgment of the Circuit Court of Logan County.

*Judgment affirmed.*