# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.)  No. 24-164** (Hancock County CC-15-2022-F-87)

**Connor Crowe,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Connor Crowe appeals his sentence as set forth in the Circuit Court of Hancock County's February 15, 2024, sentencing order, upon his conviction for two counts of second-degree murder.[1] The petitioner asserts the circuit court erred in imposing his sentence without addressing the mitigating circumstances to be considered when a juvenile has been transferred to criminal jurisdiction, as set forth in West Virginia Code § 61-11-23(c). The petitioner further argues that his sentence is unconstitutionally disproportionate in light of his age at the time he committed his crimes. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

On September 24, 2020, the petitioner, then thirteen years old, shot and killed his mother and his fifteen-year-old sister. Subsequently, the State filed a juvenile delinquency petition alleging that the petitioner had committed two counts of first-degree murder.[2] Evaluations were ordered to determine the petitioner's competency and criminal responsibility, and the petitioner was eventually found competent to stand trial. In August 2021, the State filed a motion to transfer the case to adult criminal jurisdiction. Thereafter, in April 2022, the petitioner also filed a motion to transfer the matter to criminal jurisdiction, advising the court that he had reached an agreement with the State to plead guilty to two counts of second-degree murder[3] if the case was transferred

---

[1] The petitioner appears by counsel P. Zachary Stewart, and the respondent appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] *See* W. Va. Code § 61-2-2.

[3] *See* W. Va. Code § 61-2-3.

to criminal jurisdiction. Accordingly, the matter was transferred to adult criminal jurisdiction,[4] and the petitioner pled guilty to two counts of second-degree murder in November 2022. The circuit court ordered a presentence investigation ("PSI") to be conducted and advised that in completing the report, the probation officer was to address the mitigating circumstances to be considered when a juvenile has been transferred to criminal jurisdiction, as set forth in West Virginia Code § 61-11-23(c).[5] On May 2, 2023, the final PSI report was submitted to the court.

During the course of the proceedings, the petitioner underwent three comprehensive mental health evaluations: one performed by Christi Cooper-Lehki, D.O.; one performed by Thomas R. Adamski, M.D.; and one performed by Brittany Dawkins, Psy.D. Each of the reports was provided to the court for consideration. In summary, the evaluators agreed that the petitioner was of average intelligence and had an appreciation for wrongfulness, but they disagreed as to whether the petitioner had autism spectrum disorder. The petitioner's counsel filed a sentencing memorandum, highlighting issues for the circuit court to consider when sentencing the petitioner, including his age at the time of the offenses; the impacts of COVID-19 and related isolation on juveniles; the petitioner's autism diagnosis and lack of therapy; the "gun culture" in the petitioner's home; and his access to an unsecure, loaded firearm.

The circuit court held a sentencing hearing on May 30, 2023, during which it adopted the PSI report as its findings of fact. The State presented the testimony of Dr. Cooper-Lehki, a child and forensic psychiatrist, who testified that after evaluating the petitioner, she found him to be competent to stand trial and criminally responsible, and she diagnosed him with the mildest level of autism spectrum disorder. Dr. Cooper-Lehki opined that as a result of his autism, the petitioner likely "did not have the normal attachment that you would expect towards his sister and his mother" but stated that he was able to distinguish right from wrong and that "he knew [killing them] was wrong." Regarding rehabilitation, Dr. Cooper-Lehki opined that the petitioner had "elevated risk factors for dangerousness." For example, Dr. Cooper-Lehki noted that the petitioner only experienced remorse because "he got caught and his life is messed up" and that he "has little empathy, very low empathy." The petitioner presented the testimony of several employees from his juvenile detention center, all of whom reported positive interactions with the petitioner and opined that he had potential for rehabilitation. Following the presentation of evidence, several family members gave statements about the negative impact the deaths had had on them, and the petitioner's counsel read a letter authored by the petitioner on his behalf.

---

[4] Pursuant to West Virginia Code § 49-4-710(c), "[t]he circuit court shall transfer a juvenile proceeding to criminal jurisdiction if a juvenile who has attained the age of fourteen years makes a demand on the record to be transferred to the criminal jurisdiction of the court."

[5] The mitigating circumstances to be considered include the juvenile's age at the time of the offense, impetuosity, family and community environment, ability to appreciate the risks and consequences of the conduct, intellectual capacity, the results of any mental health evaluations, peer or familial pressure, level of participation in the offense, ability to meaningfully participate in his or her defense, capacity for rehabilitation, school records, special education evaluations, trauma history, faith and community involvement, and involvement in the child welfare system. *See* W. Va. Code § 61-11-23(c).

In pronouncing the petitioner's sentence, the circuit court spoke at length regarding its reasoning and the mitigating circumstances. Specifically, the court found that the petitioner was intelligent and had planned out the killings, including creating a story to misdirect law enforcement during their investigation. The court acknowledged that the petitioner claimed during his psychological evaluations to have been abused by his stepfather, but noted that his family members, including his own father, saw no signs of physical abuse, and the court noted a normal developmental history. The court considered the evidence regarding whether the petitioner had autism and found that the diagnosis had been ruled out earlier in the petitioner's childhood and that Dr. Adamski observed no symptoms or behaviors that would suggest autism. Nevertheless, the court pointed out that Dr. Cooper-Lehki, who had diagnosed the petitioner with autism, had opined that autism did not interfere with his criminal responsibility. Further, the court found that the petitioner displayed very little empathy, was a threat to people he lives with or becomes angry with, and was only "sorry for the fact that [he] didn't get away with it[.]" Memorializing its findings in its February 15, 2024, sentencing order, the court, "after careful consideration of the evidence and information before it and all of the factors contained in [West Virginia] Code § 61-11-23," sentenced the petitioner to two consecutive terms of forty years of imprisonment for his convictions of second-degree murder.[6] The petitioner now appeals.

This Court "'reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." *State v. Hall*, 250 W. Va. 631, 639, 906 S.E.2d 284, 292 (2023). "Where the issue involves the application of constitutional protections, our review is de novo." *State v. Patrick C.*, 243 W. Va. 258, 261, 843 S.E.2d 510, 513 (2020) (citations omitted).

On appeal, the petitioner first argues that the circuit court erred in failing to adequately consider the mitigating circumstances listed in West Virginia Code § 61-11-23(c) in imposing his sentence. Specifically, the petitioner complains that the court did not comprehensively address the mitigating factors listed and improperly deemed circumstances required to be considered, including the petitioner's family environment, his mental health evaluation, and his trauma history, as "not necessarily relevant" for consideration. The petitioner further argues that the circuit court's adoption of the PSI report, without further analysis, was insufficient to address the mitigating factors, particularly with regard to the petitioner's age at the time of the offenses.

Upon our review, we find no abuse of discretion in the circuit court's consideration of the mitigating circumstances listed under West Virginia Code § 61-11-23(c). A sentencing court must consider the mitigating circumstances enumerated under § 61-11-23(c) when "determining an appropriate sentence for a person who committed a felony as a juvenile, was transferred to the adult criminal jurisdiction of the court, and was found guilty of the crime." *Hall*, 250 W. Va. at 638, 906 S.E.2d at 291. We have explained that "a sentencing court must place its consideration of the mandatory factors [under West Virginia Code § 61-11-23(c)] into the record, either by order or on the record at a hearing." *Id.* (citing *Lucas*, 201 W. Va. at 273, 496 S.E.2d at 223, Syl. Pt. 1, in part). A "court satisfies a statutory requirement that it 'shall consider' certain factors when

---

[6] After the May 2023 sentencing hearing, the petitioner filed a motion for reduction of sentence pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure. The circuit court denied the motion by order entered on the same date as the sentencing order.

making a sentencing decision where the sentencing hearing demonstrates that the court 'actually considered' the factors 'on the record' or states its consideration in an order." *Id.* at 639, 906 S.E.2d at 292. A court "need not expressly consider each factor by name or quote the statute," so long as it "demonstrate[s] that it was aware of West Virginia Code § 61-11-23(c)'s requirement that it consider certain mitigating circumstances when sentencing a person who committed a crime as a juvenile and whose case was transferred to adult criminal jurisdiction." *Id.*

Here, the circuit court clearly demonstrated that it "was aware of West Virginia Code § 61-11-23(c)'s requirement that it consider certain mitigating circumstances" when sentencing the petitioner. Prior to sentencing, the circuit court expressly directed the probation officer to address the mitigating circumstances when preparing the PSI report, which the officer did, and the court adopted the PSI report as its findings of fact without objection from either party at the sentencing hearing. Further, the circuit court addressed several mitigating circumstances on the record, including the petitioner's intellectual capacity, level of participation in the offenses, capacity for rehabilitation, the psychological/psychiatric evaluations, and trauma history. The court specifically found that the petitioner was intelligent, planned the killing and created a story to divert attention away from himself, lacked empathy, was only remorseful for getting caught, and had a normal developmental history with no signs of abuse observed by close family members. While the petitioner argues that the court failed to give adequate consideration to his age and improperly disregarded factors such as his autism diagnosis as not relevant, the record belies these assertions. The circuit court mentioned the petitioner's age at the time of the offenses several times during the sentencing hearing and extensively considered the petitioner's potential autism diagnosis, ultimately concluding that even if the petitioner was properly diagnosed with autism, it did not interfere with his criminal responsibility. Lastly, in its sentencing order, the circuit court noted that it was imposing the petitioner's sentence "after careful consideration of . . . all of the factors contained in [West Virginia] Code § 61-11-23." Accordingly, given that the circuit court clearly demonstrated its awareness of West Virginia Code § 61-11-23(c)'s requirement that it consider certain mitigating circumstances and placed such consideration upon the record and in its order, we find no abuse of discretion.

The petitioner next argues that his sentence of forty years of imprisonment for each count of second-degree murder, to be served consecutively, is disproportionate, violating the West Virginia and United States Constitutions, due to his age at the time of the offenses. The petitioner does not claim that the circuit court considered any impermissible factors but, rather, focuses his argument on the court's purported failure to properly consider the mitigating circumstances under West Virginia Code § 61-11-23(c). He specifically argues that his sentence is disproportionate because the court failed to consider his age and ignored his pleas for leniency and his "hopes to make a life for himself[.]"

"Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). We ordinarily limit proportionality reviews to sentences "where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Second-degree murder has a fixed

maximum sentence set by statute,[7] and the petitioner makes no assertion that he received a life recidivist sentence. Accordingly, because the sentence imposed was within statutory limitations and the court considered no impermissible factor, the petitioner's sentence is not subject to appellate review. *See* Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982) ("Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."). While the petitioner cites to a United States Supreme Court case, *Miller v. Alabama*, 567 U.S. 460, 479 (2012), regarding cruel and unusual punishment and disproportionate sentences, that case concerns the imposition of lifetime incarceration without the possibility of parole for crimes committed while a juvenile. This case does not stand for the proposition that the petitioner's effective eighty-year sentence is disproportionate. In light of the foregoing, we conclude his sentence was not unconstitutionally disproportionate.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 21, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[7] "Murder of the second degree shall be punished by a definite term of imprisonment in the penitentiary which is not less than ten nor more than forty years." W. Va. Code § 61-2-3.